**In the Matter of the SPECIAL APRIL 1977 GRAND JURY.**

**Appeal of William J. SCOTT, Witness.**

No. 78–1459.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1978.

Decided July 11, 1978.

Rehearing and Rehearing En Banc Denied Aug. 11, 1978.

Fred F. Herzog, Chicago, Ill., for appellant.

Jeremy D. Margolis, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before CUMMINGS, SPRECHER and BAUER, Circuit Judges.

PER CURIAM.

Appellant Attorney General William J. Scott is the subject of a federal grand jury investigation. On March 17 and 20, 1978, grand jury subpoenas *duces tecum* were served upon five members of his staff, calling for the production of his campaign records, employee rosters, his travel records, and long distance telephone •bills. On March 22, appellant "in his Official Capacity of Attorney General of the State of Illinois" moved to quash or modify those subpoenas on seven different grounds. On March 24, Chief Judge Parsons of the Northern District of Illinois advised counsel of his tentative conclusion that these subpoenas were enforceable.

On March 28, an Assistant United States Attorney responded to the appellant's motion to quash or modify the subpoenas by filing an affidavit and certain exhibits *in camera.* Another affidavit of the same date described the conversations the prosecutor had with the five subpoenaed persons or their counsel and portrayed the ease of compliance.

On April 5, Judge Parsons modified the subpoenas to the extent that they may have covered the contents of telephone conversations and official meetings, but the motion to quash was denied, resulting in appellant's filing a notice of appeal. Stays were denied by the district court, this Court and the Supreme Court, and the subpoenas, including two additional ones served on April 6th, were complied with during the week of April 17.

I. *Mootness*

In the last portion of its brief on appeal, the Government claims that the issues raised by the appeal are moot because of the compliance with the subpoenas. Of course it is an empty gesture to "quash" a subpoena already honored (see *United States v. Johnson*, 215 F.Supp. 300, 318 (D.Md.1963), affirmed and remanded on other grounds, 337 F.2d 180 (4th Cir. 1969), affirmed on other grounds, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681) but the case still may be justiciable if the controversy is capable of repetition, yet evading review. See, *e. g., Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1; *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303.

Both parts of this mootness standard as recently articulated by the Supreme Court appear to be met here. See *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707; *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350. First, as the dates outlined above indicate, the challenged action was too short to be litigated fully prior to appellant's compliance. While it could be argued that appellant could have obtained review before compliance by refusing to supply the documents and appealing a subsequent finding of contempt, the Supreme Court has not required litigants to subject themselves to contempt or criminal sanctions in order to meet this prong of the mootness test. See, *e. g., Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683; *First National Bank of Boston v. Bellotti, supra*.

The second prong of the test is that there is a reasonable expectation that the same complaining party will be subjected to the same action again. That prong is satisfied here because as we were advised at oral argument this subpoena is part of a continuing investigation and future subpoenas of state officials, including the Attorney General's office, subject to the same objection are likely. Compare *Securities and Exchange Commission v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148.

## II. Immunity and Privilege

■ Appellant's first attack on the subpoenas is that they represent an unconstitutional federal "excursion" into the territory of exclusive state sovereignty, apparently on the grounds that certain state functions are immune from subpoena and certain state records are privileged from subpoena. We disagree. *Branzburg v. Hayes*, 408 U.S. 665, 668, 92 S.Ct. 2646, 33 L.Ed.2d 626, emphasized the public right to obtain every man's evidence through grand jury proceedings, and *United States v. Nixon*, 418 U.S. 683, 709–710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, noted that the process for the production of evidence has only limited exceptions which are "not lightly created nor expansively construed  *  *  *."

■ Nothing in the United States Constitution immunizes any "exclusive domain of the state" (Br. 24) from the reach of a federal grand jury, and appellant has cited no case recognizing any such immunity. Compare *Pitcher v. United States Attorney*, 199 F.Supp. 862 (E.D.La.1961); *Touhy v. Ragen*, 340 U.S. 462, 470, 71 S.Ct. 416, 95 L.Ed. 417 (Frankfurter, J., concurring). As then-Judge Webster's recent discussion of the grand jury's power with respect to the Sioux Indians indicates, the existence of some degree of sovereignty does not excuse a state from its responsibility to provide evidence to the grand jury. See *In re Long Visitor*, 523 F.2d 443, 446 (8th Cir. 1975); cf. *Martin v. Hunter's Lessee*, 1 Wheat. 305, 4 L.Ed. 97. Rather than carving out an unprecedented exemption from an arm of the federal government's enforcement powers, the requisite deference to a state's needs can be applied by considering with some care whether those needs are sufficient to create a privilege for certain state records. Compare *United States v. Burr*, 25 Fed.Cas. No. 14,692d, pp. 30, 35 (1807); *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

Certainly the Tenth Amendment and *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245, do not justify a contrary result. The federal interest in obtaining evidence in order to enforce its criminal laws against individuals is of an entirely different class from the interest asserted in *Usery*, where Congress sought "to regulate directly the activities of States as public employers  *  *  *" (at 841, 96 S.Ct. at 2469). As discussed below, the impact of a subpoena on state functions is markedly different from the *Usery* direct system of regulation that requires a reallocation of state resources. Accord, *In re Grand Jury Proceedings*, 563 F.2d 577 (3d Cir. 1977);[1] cf. *National League of Cities v. Usery*, 426 U.S. 833, 856, 96 S.Ct. 2465, 49 L.Ed.2d 245 (Blackmun, J., concurring). This distinction is particularly applicable here because this grand jury has not embarked on a "grandiose, brazen fishing expedition  *  *  * into the affairs of the State of Illinois" (Br. 24) but rather is concerning itself with appellant's own affairs. To paraphrase from Judge Swygert's recent opinion in *Marshall v. City of Sheboygan*, 577 F.2d 1 (7th Cir. 1978), "enforcement of the  *  *  * [subpoenas] against the States and their subdivisions will not '[impair] the States' integrity or their ability to function effectively in a federal system'" (6).[2]

■ Nor should these records be privileged from disclosure. As a general matter, courts consistently have rejected the view that state records are privileged from disclosure (see, e. g., *In re Grand Jury Proceedings*, 563 F.2d 577 (3d Cir. 1977); see generally *Matter of Grand Jury Impaneled January 21, 1975*, 541 F.2d 373 (3d Cir. 1976), even in cases in which state law prohibited the disclosure of the records. E. g., *In re New York State Sales Tax Records*, 382 F.Supp. 1205, 1206 (W.D.N.Y.

---

1. There the court recognized only a federal common law privilege of state legislators, in accord with *United States v. Craig I*, 528 F.2d 773 (7th Cir. 1976), but rejected in *United States v. Craig II*, 537 F.2d 957 (7th Cir. 1976) (*en banc*), certiorari denied *sub nom. Markert v. United States*, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796.

2. Quoting *Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 44 L.Ed.2d 363.

1975).[3] Where, as here, the State argues that at least some of the records are required to be disclosed rather than suppressed under state law, it is difficult to imagine how these precedents can be avoided.

More specifically, appellant offers no reason beyond the supposed exclusivity of the sovereign under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, why a privilege is needed for these documents or why a privilege is appropriate under the Federal Rules of Evidence standard of developing privileges by resort to "principles of the common law as * * * interpreted in the light of reason and experience."[4] For example, there is no reason to expect that any worthwhile conduct will be deterred if employee rosters are disclosed. Any unfortunate results of the disclosure of remaining types of items such as travel records, lists of telephone calls (as opposed to their substance) or campaign records pale by comparison to the hazards unsuccessfully claimed in an attempt to quash the subpoena in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039; cf. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659. Since the Government does not seek "confidential communications, informant identities and the contents of case files" (Govt. Br. 12 n. 10), appellant's use of this justification for a privilege is misplaced (Br. 47–50; but see Reply Br. 11). In light of the relative unimportance of the need to make the documents privileged, the "two-fold aim of criminal justice—that guilt shall not escape nor innocence suffer"—demands that these items be available to the grand jury. See *Matter of Grand July Impaneled January 21, 1975*, 541 F.2d 373, 382 (3d Cir. 1976).

### III. *Reasonableness of the Subpoenas*

Next appellant offers several reasons why the subpoenas should be quashed under the limitation in Rule 17(c) of the Federal Rules of Criminal Procedure on "unreasonable or oppressive" subpoenas. The argument that compliance is oppressive is virtually frivolous, for, as previously noted, the persons subpoenaed already have complied with the requested documentary production. The Government has not complained that the compliance was deficient and the speed and ease with which the subpoenas apparently were complied belies any claim of oppressiveness. See generally *Brown v. United States*, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500. Nor were the subpoenas oppressive because, as claimed at oral argument, the original documents turned over to the grand jury are needed for auditing purposes. First, the Government responded that it was making (and had made known its willingness to make) needed original documents available to the State. Second, despite his counsel's oral assertion here, appellant made no showing whatsoever in the court below that the ab-

---

**3.** If any records whose disclosure is prohibited by Section 11 of the Illinois State Records Act (Ill.Rev.Stats. (1977) ch. 116 §§ 43.4 et seq., 43.14) are included in the records subpoenaed, we agree with Judge Curtin that the Supremacy Clause requires their disclosure to the grand jury unless the materials are otherwise privileged. 382 F.Supp. 1205. This requirement is particularly justifiable in light of Section 11's explicit recognition, similar to the New York statute, that the restriction against disclosure is not absolute. Section 11 provides:

"All records made or received by or under the authority of or coming into the custody, control or possession of public officials of this State in the course of their public duties are the property of the State and shall not be mutilated, destroyed, transferred, removed or otherwise damaged or disposed of, in whole or in part, *except as provided by law*." (Ill.

Rev.Stats. (1977) ch. 116, § 43.14) (emphasis added).

**4.** Rule 501 of the Federal Rules of Evidence provides:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

sent subpoenaed documents would have a deleterious effect on the functioning of any state office. Finally, even if true, a claim of disruption caused by record production does not preclude compliance with a grand jury subpoena. See *Matter of Grand Jury Impaneled January 21, 1975,* 541 F.2d 373 (3d Cir. 1976).

The contention pressed most vigorously by appellant on this appeal is that some of the documents were available through a request under the Illinois State Records Act (Ill.Rev.Stats. (1977) ch. 116, §§ 43.4 *et seq.*), so that requesting them by subpoena is unreasonable and oppressive. The Records Act provides that certain state records "are public records available for inspection by the public." *Id.* § 43.6. Relying on Judge Weinfeld's formulation in *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y. 1952), recently repeated by the Supreme Court in *United States v. Nixon,* 418 U.S. 683, 699, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039, appellant argues that "in order to require production prior to trial, the moving party must show * * * that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence." It is also asserted that use of the State Records Act is particularly appropriate under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, because that case purportedly established that the federal government has a special duty to avoid such unreasonable interference in the state's affairs.[5]

Initially, however, it does not appear true that most of the subpoenaed documents are available under the Act, or that the remainder can be procured under reasonable terms. Even appellant admits that many of the documents, such as campaign information, would be unavailable under the Act. As to the remaining documents, the Act provides that they cannot be viewed if they are then being used by state officials (§ 43.6). Also, the Act does not permit the originals to be removed (§ 43.7) and even allows the state official discretion to permit

viewing only of copies (*id.*). Of course the Act provides no mechanism by which a requesting party can guarantee that there was full compliance with its request.

■ Even assuming that the Act theoretically may be sufficient in some cases, applying it to these unique circumstances would permit the Attorney General to control the release and availability of documents under the Act (§ 43.6; see ch. 14 § 4). Apart from the justifiable doubt of full compliance that the Government would have without the force of a subpoena when the purported subject of the investigation would choose what documents to release, requiring pursuit of this alternate method of procurement is not justified anyway by the rationale of Judge Weinfeld's rule in *Iozia.* As that rule has been applied, it is used to avoid allowing a party who may have the needed document in its own possession, or could easily obtain it from another source, to force the subpoenaed party to bear the costs of searching for the document. Placing such a burden on the subpoenaed party when another source is available is deemed unreasonable and oppressive. See, *e. g., United States v. Cohen,* 15 F.R.D. 269 (S.D.N.Y.1953); *United States v. Schine,* 126 F.Supp. 464 (W.D.N.Y.1954); *United States v. Duncan,* 22 F.R.D. 295 (S.D.N.Y.1958); *United States v. Woodner,* 24 F.R.D. 33 (S.D.N.Y.1959). In fact, in extrapolating on the rule in *Nixon,* the Supreme Court described it as asking whether "the subpoenaed materials are not available from any other source." 418 U.S. at 702, 94 S.Ct. at 3105.

■ When put in this context, the inapplicability of the rule here becomes apparent. It is not denied that the obligation to search for and produce the documents falls on the Attorney General's office whether or not a subpoena is used. The argument that the Act should have been used is therefore not the accepted argument that the subpoena places an unduly oppressive burden on the appellant but rather essentially is a claim that using a subpoena instead of the

---

5. *Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570, is of no solace to appellant despite his insistence that it establishes the need to use an available statuto- ry plan rather than court process. The dispute there was over public access to items already subpoenaed and did not involve the power to reach evidence by subpoena.

Act is not the most sensitive manner of proceeding and that it therefore is inconsistent with some penumbra of "Our Federalism." While it may have been more seemly for the United States Attorney to seek to use the State Records Act before resorting to a subpoena, given the potential problems with compliance under the Act, the inapplicability of the Act to many of the documents sought, and the necessity that some sensitivities be implicated in almost any grand jury investigation (compare *United States v. McGrady*, 508 F.2d 13, 18 (8th Cir. 1974), certiorari denied, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661), we cannot say that it was an abuse of discretion not to quash the subpoenas on this ground. See *United States v. Nixon*, 418 U.S. 683, 702, 94 S.Ct. 3090, 41 L.Ed.2d 1039. It should be noted that the Third Circuit already has held that it was not an abuse of discretion to hold that the grand jury's investigative interests outweigh a similar state "comity" concern. *Matter of Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 377–378 (3d Cir. 1976).

Our examination of the documents submitted to the district court *in camera* satisfies us as to the relevancy and materiality of the information sought.

Orders affirmed.