**Howard Leo JACKSON, Plaintiff,**

v.

**Lieutenant Susan BRINKER, et al., Defendants.**

**Cause No. IP 91–471–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 19, 1993.

Howard Leo Jackson, pro se.

David L. Steiner, Deputy Atty. Gen., Indianapolis, IN, for defendants.

ENTRY AND ORDER ON THE DEPARTMENT OF CORRECTION'S MOTIONS TO QUASH OR MODIFY THE PLAINTIFF'S SUBPOENAE

FOSTER, United States Magistrate Judge.

This matter comes before the Court on the non-party Indiana Department of Correction's motion to quash or modify two subpoenae *duces tecum* duly served on it by the United States Marshals Service on behalf of

the plaintiff.[1] In this section 1983 suit, the plaintiff complains that certain employees of the Department of Correction assigned to the Wishard Hospital Detention Ward ("Ward") violated his Fourteenth Amendment rights during two treatment visits to the Ward in October of 1990. He makes several claims: (1) defendant Brinker acted with deliberate indifference to his medical needs when she confiscated his heart medication before placing him in the Ward's holding cell, causing him injury when he suffered a mild heart attack about an hour later while in the cell; (2) defendant Brinker acted with deliberate indifference to his medical needs when, with knowledge of his serious heart condition, she ordered him locked in his Ward room taking the only key with her when she left the Ward, causing injury when medical personnel could not administer prompt care when the plaintiff suffered another heart attack in the room; (3) defendant Prestel acted with deliberate indifference to the plaintiff's medical needs when he placed a leg shackle on the plaintiff's right leg and delayed moving it to the left leg despite the plaintiff's repeated complaints of pain and discomfort and his informing defendant Prestel of surgery on that leg scheduled for the next day; (4) defendant Griffith acted with deliberate indifference to the plaintiff's medical needs by unnecessarily cancelling the plaintiff's hospital appointments, thus causing needless suffering and pain when his treatment was delayed for two months; and (5) defendants Brinker, Greene, and Wiseman violated the plaintiff's constitutional rights in the Ward by denying him visitation with his family and children, not permitting him to make collect phone calls, not permitting him to consult privately with his physicians, and by retaliating against him and his family for filing this suit. (Plaintiff's Complaint, Supplemental Complaint, and August 21, 1991 List of Contentions). The Indiana Department of Correction ("Department"), original-

ly named as a defendant, was granted judgment on the pleadings on the ground of Eleventh Amendment sovereign immunity. (Entry and Order of October 20, 1992). There are no pending dispositive motions.

The plaintiff's subpoenae seek the following documents: (1) "A complete copy of his prison packet;" (2) "A complete copy of his prison medical records;" (3) "A complete copy of investigations of the incidents at Wishard Hospital," (Plaintiff's subpoena served December 29, 1992); and (4) "A complete copy of the nursing summary reports" (Plaintiff's subpoena served on or about January 27, 1993).[2] The Department moves to quash or modify the subpoena on several grounds: (1) it objects to producing the confidential portion of the plaintiff's prison packet on grounds of relevancy and confidentiality related to investigative and security concerns (these documents were submitted to the Court for *in camera* review); (2) state law and policy and Department rules prohibit the release of the medical records to the plaintiff absent a court order; (3) it does not know to which Wishard Hospital incidents one of the subpoenae refers in its request for investigative records; (4) it wants the plaintiff to pay fifteen cents per page for copies; and (5) regarding the request for nursing summary reports, the Department asserts that it maintains no records so designated, it does not have any nursing notes from Wishard Hospital, and, if the plaintiff seeks records of medical care he received at Department institutions, state law and policy and Department rules prevent release without a court order.

For the reasons given below, the Department's motions are granted in part, denied in part, and taken under advisement in part.

*Discussion.*

 The scope of material obtainable by a Rule 45 subpoena is as broad as permitted

---

1. The plaintiff is proceeding *in forma pauperis* and *pro se* in this Cause. The Marshals Service was directed to serve the plaintiff's subpoenae pursuant to its duties under 28 U.S.C. § 1915(c). *Jackson v. Brinker*, No. 91–471–C, 1992 U.S.Dist.LEXIS 19619; 1992 WL 404537 (S.D.Ind. December 21, 1992).

2. The plaintiff originally sought these records from the Department earlier in the case by way of a Rule 34 request for production and motions to compel. Because of the Department's intervening dismissal, however, the motions to compel were denied based on Rule 34's applicability only to parties. (Entry and Order of October 19, 1992) (see footnote 18).

under the discovery rules. Fed.R.Civ.P. 45 advisory committee note to the 1991 amendment, 28 U.S.C.A. Rules 38 to 50, p. 402 (1992) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."); 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2457, at 431–32 (1971); David D. Siegel, *Practice Commentaries, in* 28 U.S.C.A.Fed. Rules Civ.Proc. Rules 38 to 50, at 347, 390–91 (1992). Consequently, if material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena. *See id.;* Fed.R.Civ.P. 26(b). Likewise, a person may raise the same objections to a subpoena as he could to discovery. *Id.*

The Department bears the burden of establishing its objections to the subpoenae. *Holifield v. United States,* 909 F.2d 201, 204 (7th Cir.1990); 9 Wright and Miller § 2457, at 435.

A Rule 45 subpoena may be resisted pursuant to subparagraph (c)(2)(B) (objecting to the requesting party who may then move to compel compliance), paragraph (c)(3) (moving to quash or modify), or subdivision (e) (in certain circumstances, simply ignoring the subpoena). The Court presumes that the Department moves under clause (iv) of subparagraph 45(c)(3)(A) to modify the subpoenae to include the plaintiff's responsibility for compliance costs and clause (iii) to quash them completely or conditionally in all other respects.

**3.** F.R.E. 501 reads in relevant part:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

### A. *Medical records.*

Although the Department concedes the relevancy of some of the plaintiff's medical records to his claims and raises no substantive objection to producing them, it nevertheless refuses to do so because it claims that state statutes and Department rules forbid such release without a court order.

■ Rule 501, Federal Rule of Evidence, provides that issues of privilege relating to claims for which federal law provides the rule of decision are governed by federal common law rather than state law.[3] It is well-settled that state privilege rules do not apply of their own force in federal § 1983 actions. *See* 12 *Federal Procedure, Lawyers Edition* § 33:264, at 295 (1988); *Kerr v. United States District Court,* 511 F.2d 192, 197 (9th Cir.1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). When applying the federal common law to an assertion of privilege derived from state law, however, federal courts should look to state law and policy to inform, though not determine, their decisions. *See Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987)[4]; *Matter of Special April 1977 Grand Jury,* 581 F.2d 589, 592 (7th Cir.), *cert. denied, Scott v. United States,* 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978).

■ To determine whether a privilege derived from state law should be recognized under federal common law, courts must "balanc[e] the policies behind the privilege against the policies favoring disclosure." *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1343 (5th Cir.1981); *see In re Hampers,* 651 F.2d 19,

**4.** "When it is clear that a desire to ward off civil rights plaintiffs played no role in the formulation of state privilege rules it would be irrational for a federal court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants. Likewise, federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes. Of course, ultimate responsibility for deciding how much weight to ascribe to such interests, and how that weight compares with the significance of competing interests, must reside with the federal courts." *Kelly,* 114 F.R.D. at 656.

22 (1st Cir.1981); *Matter of Special April 1977 Grand Jury*, 581 F.2d at 592; *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 543 (S.D.Ind.1990) (Entry of chief magistrate judge John Paul Godich). Two inquiries are pursued: first, whether the state's courts would recognize such a privilege and, second, whether the state privilege is "intrinsically meritorious" in the federal court's independent judgment. *Hampers*, 651 F.2d at 22. The person asserting a privilege bears the burden of proof. *United States v. Keplinger*, 776 F.2d 678, 700 (7th Cir.1985); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983); 9 Wright & Miller § 2457, at 435.

█ Thus, the Department's objections to compliance with the plaintiff's subpoena must be made within the framework of the federal common law of privileges. This the Department has not done. It merely cites state confidentiality statutes and the Department's own regulations in support of its conclusory argument that "state law establishes a public policy in Indiana that medical and psychological records of inmates be released only in limited circumstances or pursuant to court order."

### 1. *Indiana State law.*

The Department asserts that Indiana Code §§ 4–1–6–3(a) and 5–14–3–4(a)(9) and Department of Correction rule 1–6–6(B)(2) prohibit release of the plaintiff's medical records without a court order. The Court is compelled to examine these provisions on its own, however, as the Department neglected to provide any advice on state interpretations or to argue any state interests served by them. Review, therefore, will be summary and limited to the statutes and rules cited by the Department.

Indiana Code § 4–1–6–1 *et seq.* codifies Indiana's Fair Information Practices Act ("F.I.P.A."). § 4–1–6–3 provides in part:

Unless otherwise prohibited by law, any state agency that maintains a personal information system shall, upon request and proper identification of any data subject, or his authorized agent, grant such subject or agent the right to inspect and to receive at reasonable, standard charges for document search and duplication, in a form comprehensible to such individual or agent:

(a) All personal information about the data subject, unless otherwise provided by statute, whether such information is a matter of public record or maintained on a confidential basis, *except in the case of medical and psychological records, where such records shall, upon written authorization of the data subject, be given to a physician or psychologist designated by the data subject.*

Ind.Code Ann. § 4–1–6–3 (Burns 1990) (emphasis added). "Personal information" is defined in the F.I.P.A. as "any information that describes, locates, or indexes anything about an individual ... including, but not limited to, his ... medical history...." Ind.Code Ann. § 4–1–6–1(b). The Department of Correction is not one of the state agencies exempted from the Act under § 4–1–6–1(d).

█ The Department's reliance on the F.I.P.A. is puzzling in light of the positions it has taken in its motion. The Department proposes to release the medical records directly to the plaintiff upon receipt of a court order despite the statute's language allowing release of medical records only to designated medical personnel and the absence of any provision or exception in the statute for broader disclosures pursuant to court orders. The Court finds that the Department has therefore waived any protection afforded by the provisions of Indiana Code § 4–1–6–3(a) against the release of the plaintiff's medical records.[5]

The Department asserts that the Access to Public Records section of Indiana's Anti-Secrecy Act ("A.S.A."), Ind.Code Ann. § 5–14–3–1 *et seq.* (Burns 1987), also prohibits release of the plaintiff's medical records without a court order. The A.S.A. declares that "it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of govern-

---

**5.** In so ruling, the Court expresses no opinion on whether § 4–1–6–3(a) does prohibit the release of the plaintiff's medical records directly to him or whether Indiana courts would find that § 4–1–6–3(a) creates a privilege against discovery.

ment and the official acts of those who represent them as public officials and employees" and states that the act "shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record." Ind.Code Ann. § 5–14–3–1; *see Indiana Department of Transportation v. Overton,* 555 N.E.2d 510, 511 (Ind.Ct.App. 1990); *Pigman v. Evansville Press,* 537 N.E.2d 547, 548 (Ind.Ct.App.1989). The core of the A.S.A. is section 3's mandate that "[a]ny person may inspect and copy the public records of any public agency. . . ." Ind. Code Ann. § 5–14–3–3. Section 4 of the act then exempts enumerated records. The strong state policy expressed in the A.S.A. favoring disclosure of agency records justifies a narrow construction of section 4's exemptions.

Section 4 of the A.S.A. reads in relevant part:

> (a) The following public records are excepted from section 3 [§ 5–14–3–3] of this chapter and *may not be disclosed* by a public agency, unless access to the records is specifically required by a state or federal statute or is *ordered by a court under the rules of discovery:*
>
> (1) Those declared confidential by state statute.
>
> (2) Those declared confidential by rule adopted by a public agency under specific authority to classify public records as confidential granted to the public agency by statute.

\* \* \* \* \* \*

(9) Patient medical records and charts created by a provider, unless the patient gives written consent under IC 16–4–8.

Ind.Code Ann. § 5–14–3–4 (emphases added). The Department has not asserted that it is exempt from the operation of the Act under § 5–14–3–2.

■ Exempt records may be released under this statute whenever "ordered by a court under the rules of discovery" and the issuance of such an order under § 5–14–3–4 is governed by the usual standards governing discovery:

> The plain meaning of the phrase "ordered by a court under the rules of discovery" indicates that the court order must comply with the rules of discovery in order to make the exceptions inapplicable. The rules of discovery allow discovery of matters which are not privileged.

*Board of Trustees of the Public Employees' Retirement Fund of Indiana v. Morley,* 580 N.E.2d 371, 374 (Ind.Ct.App.1991). At most, then, section 4 imposes a procedural requirement that Indiana courts pre-approve discovery requests directed to state agencies for those records specifically enumerated in section 4, but it does not create new substantive limitations on disclosure beyond those provided by the established rules of discovery and privilege. The statute therefore cannot be read as creating a new state privilege of its own accord. *See Matter of Special April 1977 Grand Jury,* 581 F.2d at 593 n. 3.

The Department's reliance on the A.S.A. is misplaced for other reasons as well. The Department specifically asserts that § 5–14–3–4(a)(9) prohibits release of the plaintiff's medical records absent a court order. But this section allows release of medical records if the patient "gives written consent under IC 16–4–8"[6] and it would appear that a Rule

---

**6.** Indiana Code § 16–4–8–4.1 provides:

"Except as provided in section 5 of this chapter [§ 16–4–8–5, consents for insurance purposes], a patient's written consent for release of the patient's health record must include the following:
(1) The name and address of the patient.
(2) The name of the person requested to release the patient's record.
(3) The name of the person or provider to whom the patient's health record is to be released.
(4) The purpose of the release.

(5) A description of the information to be released from the health record.
(6) The signature of the patient, or the patient's legal representative if the patient is incompetent.
(7) The date on which the consent is signed.
(8) A statement that the consent is subject to revocation at any time, except to the extent that action has been taken in reliance on the consent.
(9) The date, event, or condition upon which the consent will expire if not previously revoked."

Ind.Code Ann. § 16–4–8–4.1 (Burns Supp.1990).

45 subpoena, directed to the Department, signed by the plaintiff, and specifying the records requested, satisfies the criteria and the purposes of Indiana Code § 16–4–8–4.1 and, therefore, § 5–14–3–4(a)(9) as well. The Department did not address the issue of the plaintiff's consent under these statutes.

■ § 5–14–3–4(a) provides that the enumerated records may not be disclosed "unless access to the records is specifically required by a state or federal statute." Ind. Code Ann. § 5–14–3–4(a). The plaintiff's subpoena appears to constitute a request for medical records which satisfies the criteria of Indiana's Access to Health Records Act, Acts 1982, P.L. 117, as amended, Ind.Code Ann. § 16–4–8–1 *et seq.* (Burns 1990 and Supp. 1992), thus triggering the Department's statutory duty to release those records to the plaintiff under § 16–4–8–2. *See* Ind.Code Ann. §§ 16–4–8–2, 16–4–8–3, and 16–4–8–4.1 (Burns Supp.1992). Because the Health Records Act appears in this case to constitute a state statute specifically requiring access to the plaintiff's medical records, it qualifies as an exception to § 5–14–3–4's protections. The Court restricts this holding to this case, however; it does not make a definitive interpretation of the Act in the absence of advice and argument from the parties on state law.

■ Further, a federal Rule 45 subpoena constitutes "access ... ordered by a court under the rules of discovery" permitting disclosure of exempt records under

Indiana Code § 5–14–3–4. The Advisory Committee made the following comments to the 1991 amendment to Rule 45:

> Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions.... Two courts of appeals have touched on the issue and have described lawyer-issued subpoenas as mandates of the court. *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.*, 893 F.2d 605 (3d [C]ir[.] 1990); *Fisher v. Maruben[i] Cotton Corp.*, 526 F.2d 1338, 1340 (8th [C]ir., 1975). *Cf. Young v. United States ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 821 [107 S.Ct. 2124, 2145, 95 L.Ed.2d 740] (1987) (Scalia, J. concurring).

Fed.R.Civ.P. 45 advisory committee note to the 1991 amendment, 28 U.S.C.A.Fed.Rules Civ.Proc. Rules 38 to 50, at 401–02 (1992). Subdivision 45(e) provides that it is a contempt of court for a person to fail to obey or respond to a subpoena "without adequate excuse."[7] Under certain circumstances, therefore, a subpoena may not have the effect of a court order and a person may resist that subpoena by simply refusing to respond without risking contempt.[8] However, it is clear that the circumstances giving rise to an "adequate excuse" under subdivision (e) do not include assertions of privilege, paragraph 45(d)(2),[9] or objections based on costs of com-

---

**7.** Subdivision (e) of Rule 45 reads: "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a non-party to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A)." Fed.R.Civ.P. 45(e). Clause (ii) provides that a court shall quash or modify a subpoena if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person...." Fed.R.Civ.P. 45(c)(3)(A)(ii). While subdivision (e) speaks of contempt for failure to "obey" a subpoena, the context makes clear that what is meant is contempt for *ignoring* a subpoena, *i.e.*, for failing to "respond" to a subpoena by either complying or

expressly raising objections under subparagraphs (c)(2)(B), (c)(3)(A), or (c)(3)(B).

**8.** Alternatively, subdivision (e) may be interpreted as only making possession of an "adequate excuse" an affirmative defense to contempt for failure to respond to a subpoena. *See Desmond v. Hachey*, 315 F.Supp. 328, 332 (D.Maine 1970). In that case, a subpoena would always have the status of an order of court.

**9.** Paragraph (d)(2) of Rule 45 requires that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made *expressly* and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed.R.Civ.P. 45 (emphasis added). This requirement for express objection does not permit a person to refuse to

pliance.[10] In this case, therefore, since the Department only raises privilege and costs objections to complying with the plaintiff's subpoena for medical records, and its privilege argument essentially is only a demand for a court order, the plaintiff's Rule 45 subpoena has sufficient status of an "order of court" by virtue of the Supremacy Clause of the Constitution to satisfy § 5–14–3–4(a). If the Department does not have a substantive federal common law privilege to assert, Indiana Code § 5–14–3–4(a) permits it to produce a plaintiff's medical records pursuant to a federal Rule 45 subpoena *duces tecum*; it would be a waste of the Court's and the parties' time to litigate the issuance of superfluous additional orders.

▆▆▆▆ Finally, the Department claims that its rule 1–6–6(B)(2), which governs the Department's release of confidential information [11] to offenders' attorneys, protects the plaintiff's medical records. This rule reads in part:

Attorneys representing offenders may have access to an offender's file consistent with the following procedures.

\* \* \* \* \* \*

(2) The attorney may have access to all confidential material in the offender's rec-

ord except medical, psychological or psychiatric data, or clinical data produced as a consequence of the offender's involvement in a substance abuse program. These records may be released to a physician, psychologist or psychiatrist designated in writing by the offender.

(3) Access by an attorney to the "confidential" section of the packet shall occur if accompanied by a court order to that effect.

Ind.Admin. Code tit. 210, r. 1–6–6(b)(2) and (3). Department of Correction rule 1–6–4 governs the release of information to offenders; it reads in part:

(A) An offender or a person designated by an offender as his agent may inspect those portions of the official record classified as confidential with the following exceptions:

(1) Medical, psychological, psychiatric data, or clinical data produced as a consequence of the offender's involvement in a substance abuse program, may not be released to the offender or his agent. These records may be released to a physician, psychologist or psychiatrist designated in writing by the offender.

respond to a subpoena because of privilege objections.

**10.** The standard for determining an "adequate excuse" is not defined in the Rule, probably in order to encourage through the risk of uncertainty, express objections and orderly resolution of disputes. Siegel, 28 U.S.C.A.Fed. Rules Civ. Proc. Rules 38 to 50, at 396–97. But from paragraph (d)(2)'s requirement that privilege and work product objections be expressly made and subdivision (e)'s one example of an adequate excuse (see footnote 7), the inference can be drawn that only obvious fundamental errors in form or reach qualify as adequate excuses. Thus, ignoring subpoenae which are not personally served or which require performance beyond territorial limits would likely not risk contempt under subdivision (e), but objections requiring judgment calls, exercises of a court's discretion, or argument and support, *e.g.*, privilege, work product, or costs objections, would probably risk contempt if not expressly raised.

In light of the Advisory Committee's caution that, since subpoenae are "not in fact ... uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney," Fed.R.Civ.P. 45 advisory committee note to the

1991 amendment, 28 U.S.C.A. Rules 38 to 50, at 405, it is likely that Rule 45's "adequate excuse" defense to contempt would be broader than the established "transparently invalid or [having] only a frivolous pretense to validity" standard governing contempts for ignoring court orders generally. *See Walker v. City of Birmingham*, 388 U.S. 307, 315, 87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210, *reh'g denied*, 389 U.S. 894, 88 S.Ct. 12, 19 L.Ed.2d 202 (1967).

**11.** Department rule 1–6–2(B) defines confidential information:

"Confidential information shall include personal or private information concerning the offender including, but not limited to his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports.

"Confidential information shall, also, include medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports emanating from an approved drug or substance abuse program consistent with prevailing law or promulgated regulation."

Ind.Admin..Code tit. 210, r. 1–6–2(b).

Ind.Admin. Code tit. 210, r. 1–6–4. The Department argues that these rules prohibit it from releasing the plaintiff's medical records directly to him.[12]

Indiana Code § 11–8–5–2 "which is cast as an enabling act, governs the classification of Department of Corrections documents." *Avery v. Webb*, 480 N.E.2d 281, 282 (Ind.Ct. App.1985). This statute reads in part:

(a) The department may, under IC 4–22–2 [formal rulemaking], classify as confidential the following personal information maintained on a person who has been committed to the department or who has received correctional services from the department:

(1) Medical, psychiatric, or psychological data or opinion *which might adversely affect that person's emotional well-being.*

\* \* \* \* \* \*

(b) The department may deny the person about whom the information pertains and other persons access to information classified as confidential under subsection (a). However, confidential information shall be disclosed:

(1) Upon the order of a court;

\* \* \* \* \* \*

(c) The department shall disclose information classified as confidential under subsection (a)(1) to a physician, psychiatrist, or psychologist designated in writing by the person about whom the information pertains.

Ind.Code Ann. § 11–8–5–2 (Burns 1992) (emphasis added). It would appear that Department of Correction rules 1–6–6(B)(2) and 1–6–4 exceed the authority of § 11–8–5–2 and rule 1–6–2(B) (quoted in footnote 11) in that they impose a blanket confidentiality protection on all of an offender's medical records regardless of whether release of the records might adversely affect that person's emotional well-being. To the extent that the Department's rules exceed their authority, they need not be considered in our inquiry. The Department does not contend that release of the plaintiff's medical records might adversely affect his emotional well-being and the medical records which would be relevant to this case, *viz.* those pertaining to the evaluation and treatment of the plaintiff's heart condition, do not strike the Court as ones which would have an adverse emotional impact.[13] As the filings and communications from the plaintiff amply demonstrate, he is already well-aware of his serious heart ailment.

▉▉▉▉ Moreover, as discussed above, a federal Rule 45 subpoena *duces tecum* satisfies Indiana Code § 11–8–5–2(b)(1)'s provision that "confidential information shall be disclosed ... [u]pon the order of a court." Finally, as with the Anti–Secrecy Act, it is doubtful that § 11–8–5–2 even creates an evidentiary or discovery privilege in light of § 11–8–5–2(b)(1)'s allowance of disclosure "upon the order of a court" without specifying any criteria or standard limiting a court's discretion.[14] For these reasons, the Court

12. The obvious design of these rules is to prevent release of medical records directly to offenders. Disclosure is authorized to physicians, psychologists, and attorneys presumably because the state trusts that these professionals will exercise judgment in releasing potentially injurious information to a patient. Therefore, the rule cannot be interpreted to allow disclosure of these records directly to the plaintiff as an attorney because of his *pro se* status and the status of his subpoena as an order of court.

13. The Department has not made any relevancy objections to disclosure of the plaintiff's medical records; it only mentioned in passing that "counsel recognizes that *some* of those records may be relevant." (Department's Objection and Motion to Quash/Modify Subpoena, p. 3). The Court will not allow additional time for the Department to supplement its arguments on the medical records as resolution of these issues is long overdue (see footnote 18) and it was clear to the Department that this was the appropriate time to make all objections it had.

14. One Indiana decision has recognized that "no standard is set out for the granting of such a court order" under § 11–8–5–2. *Duckworth v. Williams*, 494 N.E.2d 368, 370 (Ind.Ct.App. 1986). The Court of Appeals in that case first rejected the Department's argument that a court's discretion to order disclosure under the statute is limited to a showing that the information sought is either erroneous or erroneously classified as confidential, and then formulated the following approach for issuing such orders:

The granting or denial of a court order directing disclosure is within the sound discretion of the trial court, and the court must weigh the interest of the Department in keeping certain materials secret against the interest of the of-

concludes that Department of Correction rules 1–6–1 *et seq.* do not protect the plaintiff's medical records from disclosure.

The Court concludes that the plaintiff's medical records are not privileged or otherwise protected from disclosure under the Indiana state law cited by the Department.

### 2. *Intrinsic merit.*

 Even if the plaintiff's medical records were protected from disclosure under state law, the state privilege or other protection so afforded would not pass the second level of federal common law privilege review: an examination of the asserted privilege's intrinsic merit. This second inquiry is guided by the four-fold formula enunciated by Professor Wigmore:

(1) The communications must originate in a *confidence* that they will not be disclosed;

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties;

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered;* and

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

These four conditions being present, a privilege should be recognized; and not otherwise.

8 J. Wigmore, *Wigmore on Evidence* § 2285, at 531 (1974); *see Schafer v. Parkview Memorial Hosp.,* 593 F.Supp. 61, 64 (N.D.Ind. 1984); *Finch,* 638 F.2d at 1344; *Hampers,* 651 F.2d at 23. This evaluation is also governed by the principle that privileges in general are strongly disfavored, especially when a state law-derived privilege would impede the strong federal interest in independent adjudication of federal civil rights actions. *Finch,* 638 F.2d at 1343–44; *Hampers,* 651 F.2d at 22.

The Court need not, however, undertake a review of the merits of any state privileges in this case because the Department failed to argue any substantive state interest in nondisclosure of the plaintiff's medical records. In fact, the Department states that "[i]n this case, the Department would not object to the Court issuing an order permitting Jackson to review his medical records." (Department's motion to quash and/or modify subpoena, p. 4). It is not apparent what legitimate interests of the state or the Department would be so adversely affected by the release of the plaintiff's medical records as to outweigh the plaintiffs interest in obtaining them. An interest in releasing medical records only to physicians, psychologists, or attorneys designated by a patient appears less designed to serve state interests and more to protect patients from possible adverse emotional impact, as evidenced by the Department's own rules enabling statute. While this interest is not insignificant, it protects the patient, not the state, and is clearly not of sufficient weight to outweigh the very strong interest in discovering the truth in a patient's civil rights action against that state's officers. At any rate, the Department does not even argue that release of these records would threaten the plaintiff's emotional well-being. Although not required to even look, the Court does not discern a federal common law privilege which would protect the Department from disclosing the plaintiff's medical records.[15]

---

fender and his attorney in obtaining the materials.... Because the thrust of the statutes and Department rules is to restrict access to certain kinds of information, the trial court should not grant a disclosure order unless the offender's interest outweighs the Department's. *Id.* at 370. The Court thus restated the standard balancing of interests approach used to evaluate any privilege assertion under the common law; thus the statute cannot be read as creating a separate privilege protecting Department documents. *See Matter of Special April 1977 Grand Jury,* 581 F.2d at 593 n. 3.

**15.** The federal Freedom of Information Act, Pub.L. 89–487, 80 Stat. 250, as amended, 5 U.S.C. § 552, exempts medical records from its disclosure requirements, but only when release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Act provides no blanket protection for all medical records and no restriction on release of those records to the medical subject. In this case, of course, release of the plaintiff's own medical records to himself would not invade his privacy.

■ What the Department's position comes down to, then, is a refusal to comply with the plaintiff's subpoena on the sole ground that this federal court must first comply with Indiana's procedural requirement of an additional separate order specifically commanding the Department to do what the subpoena already commands it to do: produce the plaintiff's medical records. The Court obviously declines to dance to this tune and it borders on the frivolous for the Department to ask it to. Not only is it fundamental legal doctrine that federal courts are not bound by state procedural requirements, *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see Cincotta v. City of New York*, No. 83 Civ. 7506, Slip Opinion, 1984 WL 1210 (S.D.N.Y. Nov. 14, 1984),[16] but, as indicated above, a federal Rule 45 subpoena already has sufficient authority as a command of the Court, backed by the contempt power, to satisfy any state procedural concerns.

The Department argues that a court order is necessary for the protection of its employees because Indiana Code § 4-1-6-8.6(b) provides that "[i]mproper disclosure of confidential information by a state employee is cause for action to dismiss the employee." Though not mentioned by the Department, the Court notes a more ominous threat in § 5-14-3-10 which provides that it is a Class A misdemeanor for state agency personnel to disclose confidential information and that personnel who do so may be disciplined under the policies of their agency.[17] Again the Department overlooks basic law. Rejecting a state official's similar refusal to comply with a subpoena on self-incrimination grounds because state statutes criminalized disclosure, the First Circuit held that "[w]hen compliance with a federal subpoena compelled by the Supremacy Clause is at the same time the only act which could be a violation of state law, there remains no room for state law sanction." *Hampers*, 651 F.2d at 21.

The common law privilege which would be most applicable to internal Department documents appears to be the "official information" privilege. *See Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D.Calif.1987). However, none of the state interests which are usually protected by this privilege, *e.g.*, institutional security, privacy rights of citizens and inmates, or encouragement of public cooperation, are implicated by release of a prisoner's own medical records to himself. Neither the deliberative process, executive, physician-patient, or state secrets privileges would appear to apply to these facts.

16. At issue in *Cincotta* was § 50-a of the New York Civil Rights Law which is similar to the Indiana statutes and rules at issue here:
"1. All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof ... shall be considered confidential and not subject to inspection or review without the express written consent of such ... correction officer *except as may be mandated by lawful court order.*
"2. Prior to issuing such court order the judge must review all such requests and give interested parties the opportunity to be heard. No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review.
"3. If, after such hearing, the judge concludes there is a sufficient basis he shall sign an order requiring that *the personnel records in question* be sealed and sent directly to him. He shall then review the file and make a determination as to whether the records are relevant and material in the action before him. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting."
*Cincotta, supra* (*quoting* N.Y.Civil Rights Law § 50-a (McKinney's Supp.1983)) (emphasis added). After finding that the question of privilege in the case was governed by federal law, the court held:
"Even if the state law of privilege were applicable here, section 50-a of the Civil Rights Law would be inapplicable insofar as it simply lays out the procedures and burdens of proof, since those are in any event matters to be determined by reference to federal law. *See, e.g., Dixon v. 80 Pine Street Corp., supra*, [516 F.2d 1278,] at 1280 [ (2nd Cir.1975) ]."

17. "(a) A public employee, a public official, or an employee or officer of a contractor or subcontractor of a public agency, except as provided by IC 4-15-10, who knowingly or intentionally discloses information classified as confidential by state statute commits a Class A misdemeanor.

"(b) A public employee may be disciplined in accordance with the personnel policies of the agency by which the employee is employed if the employee intentionally, knowingly, or recklessly discloses or fails to protect information classified as confidential by state statute.
"(c) This section does not apply to any provision incorporated into state law from a federal statute."
Ind.Code Ann. § 5-14-3-10.

The Court concludes that the plaintiff's medical records are not privileged or otherwise protected from disclosure under federal law. The Department's motion to quash or modify the plaintiff's subpoena *duces tecum* requesting his medical records is denied.

The Department's resistance to the plaintiff's subpoena while conceding the obvious relevance of his medical records, making no argument on federal privilege, and stating that it would not object to the Court issuing an order permitting Jackson to review his medical records was a waste of this Court's and litigants' time. We do not expect any further obstruction of discovery from the Department on grounds such as these.[18]

B. *Confidential portion of prison packet.*

The Department moved to quash the plaintiff's subpoena for his complete prison packet to the extent that it requests production of the confidential portion of the packet. This portion of the packet was submitted to the Court for an *in camera* inspection. The Department raises relevancy and privilege objections to disclosure of these records. The Department's privilege assertions based on the Indiana statutes and rules discussed in the preceding section are rejected for the reasons there set forth. The Department makes additional privilege arguments, however, which are colorable under federal privilege law.[19] Though the Department's privilege argument is not as complete and specific as it should be, it is apparently asserting the "official information" privilege, see *Kelly, supra,* based on its interest in institutional security, a well-recognized federal common law privilege. After *in camera* review of the confidential packet, however, it appears to the Court that some of the documents are relevant and not privileged. The Department's thin and non-specific showing offers nothing to rebut this conclusion. In light of the security interests involved and the judicial deference due to prison managers in matters of institutional management, the Court will not direct production of the documents now, but will allow the Department time to supplement its objections to production of the documents identified as questionable by the Court. The Department's objections and arguments should be specific to each document or category of documents,

---

**18.** The plaintiff first sought these medical records by way of a Rule 34 request for production in February 1991 (while the Department was still a defendant). After receiving extensions of time in which to respond, the Department moved for a protective order on June 7, 1991 on the same grounds as presented in the present motion. The Court explicitly rejected these grounds in its Entry and Order of June 18, 1991 where it stated that "[t]he defendants are notified that the Court will order the disclosure of appropriate materials in this action notwithstanding Ind.Code 4–1–6–3 and 5–14–3–4(a)(9)." The Court allowed the Department time to supplement its motion in order to make any "viable argument" it had regarding protection of confidential materials and it was instructed to do so "in a *specific* fashion." On July 1, 1991, the Department responded with a lengthy, detailed brief arguing the merits of a motion for an entirely different protective order which had already been granted four months earlier (Order of March 5, 1991 by magistrate judge Robin Pierce in the Northern District of Indiana). In his response, the plaintiff drew defendants' counsel's attention to this strange occurrence: "The Plaintiff can not understand why the Defendants, are now offering to this Court Documents on The Defendants Post Orders, of the Detention Ward. The Plaintiff state the subject of the Defendants Post Orders, has already been discuss and a decisions given by the Court for the Northern District, U.S.Magistrate Pierce." (Plaintiff's July 8, 1991 response). The Department did nothing to correct its mistake or supplement its motion. Then the Department asserted the same state confidentiality statutes which had been rejected by the Court to resist the plaintiff's later Rule 34 request for production of "nursing summary" reports from Wishard Hospital, (Defendants' motion for protective order and memorandum in support thereof, August 22, 1991), and to resist the current subpoenae.

**19.** The Department's arguments with respect to the confidential portion of the plaintiff's packet include the following:

First regarding the confidential portion of Jackson's Institutional Packet, the objection is based upon the fact that the confidential portion of the packet contains information properly considered confidential in the prison context. The undersigned has been informed that the Confidential Section of the Institutional Packet contains separatee information, escape risk documentation, investigation reports unrelated to this case, psychological reports and other matters which are entirely immaterial to this action. Under Department policy, such confidential information contained in the portion of the Packet in question is not released to offenders. The Indiana Department of Correction seeks protection from this court regarding the production of such matters.

(Department's motion to quash subpoena, p. 2).

and the arguments must be made in a complete and non-conclusory fashion. This will be the second, *and last,* opportunity afforded the Department to make an adequate showing regarding these records. The Department shall have until 4:30 p.m. April 2, 1993 to supplement its objections. As indicated below, however, the Court rules that any Wishard Hospital nursing discharge summaries in the Department's possession or control, even those located in the confidential portion of the plaintiff's packet, must be produced for the plaintiff's inspection.

### C. Investigation of incidents at Wishard Hospital.

One of the plaintiff's subpoenae requests production of records of "the investigation of the incident at Wishard Hospital." The Department moves to quash this request because "it cannot determine which incident is in question in the Subpoena." (Department's motion to quash, p. 4). The Department requests that the Court direct the plaintiff to provide further identification of the incidents.

Admittedly, the plaintiff's *pro se* subpoena is somewhat inartful, but inartful expression alone does not excuse compliance with a subpoena; incomprehensibility does. The Department claims that it cannot determine what incidents the plaintiff refers to because he has made several trips to Wishard Hospital and it claims confusion over the meaning of the term "incident". The Court well understands the plaintiff's frustration with such assertions.[20]

It is obvious that the term "incident" refers to the occurrences which are the subject of the plaintiff's claims.[21] The Complaint identifies October 22, 1990 as the date defendant Brinker allegedly confiscated the plaintiff's heart medication; the week of October 27, 1990 when defendant Prestel allegedly chained the plaintiff's leg; and the following day as the time defendant Brinker allegedly ordered the plaintiff's hospital door locked and left with the only key. The defendants' Answer to the Complaint admits that they were aware of an incident involving the plaintiff on October 22, 1990 and were specifically aware of an incident "where the plaintiff complained about a leg shackle being too tight, and the leg shackle was moved from one leg to the other leg." The defendant's answer to the plaintiff's Supplemental Complaint admits that "[i]n the early morning hours of October 23, 1990, Officer Prestel moved a leg chain from Jackson's right leg to his left leg," that "Officer Prestel did write a disciplinary report regarding misconduct by Jackson on or about October 23, 1990," and that "Jackson's door was locked for a period of time for security reasons; however medical staff had access to Jackson at all times." (Defendant's Answer to Supplement Complaint, p. 2). Defendant Brinker's answers to two sets of the plaintiff's interrogatories demonstrate personal knowledge of the incidents which are the subject of the claims against her. (Interrogatories filed June 7, 1991 and August 22, 1991).[22] These refer-

---

**20.** "[T]he Plaintiff's subpoenae, as read, are not unreasonable.... The Plaintiff states here that the IDOC would only have to re-read the original complaint to know what "incident" at Wishard Hospital that is in question and the date/time, and further the Plaintiff believes this is just another "stall tactic" by the IDOC and their attorneys, to keep relevant and pertinent information from the Plaintiff through this Court. The IDOC and its attorneys have referred to the term "incident", stating they are not sure which "incident" the Plaintiff is talking for the purpose of the subpoenae. The Plaintiff's term and the use of the word "incident" is simply a phraseology word, not used to confuse the defendants or the IDOC, but merely semantics covering a period of time listed in the complaint." (Plaintiff's response, p. 1–2).

**21.** If the Department claims confusion because of the plaintiff's reference to "incident" rather than "incidents", then such technicality is picayune and frivolous in the light of the plaintiff's *pro se* status and the obviousness of his intention. Efficient and orderly process of litigation should not be impeded by such ridiculous tactics.

**22.** Pertinent parts of the interrogatory acknowledged by defendant Brinker on June 6, 1991 and filed with the Court on June 7, 1991:

"INTERROGATORY NO. 12: State if you did personally lock the Plaintiff in his room? and if so, why?

ANSWER: No. Another officer locked the door. The door was locked for security reasons because Jackson had taken a swing at another officer."

From the interrogatory acknowledged by defendant Brinker on August 22, 1991 and filed with the Court the same day:

ences were gleaned from only a cursory review of the file. It is next to impossible to imagine how the Department can justifiably claim that it is unable to identify any of the incidents at Wishard Hospital to which the plaintiff refers. There is no excuse for the Department's non-compliance with the plaintiff's subpoena for investigatory records regarding defendant Brinker's confiscation of his medication and locking his door or defendant Prestel's chaining of his leg.

The plaintiff further claims that defendant Griffith cancelled a hospital appointment for the plaintiff and delayed his treatment for two months in 1990 because the plaintiff had advance word of the original appointment. This is more than sufficient information for the Department to determine whether it possessed any records of investigations into defendant Griffith cancelling or delaying hospital appointments for the plaintiff. There was no excuse for the Department not to comply with this request.

■ The plaintiff also challenges the Department's Ward policies on family and children visitation, collect phone calls, and private physician conferences. Such policy challenges don't constitute "incidents" *per se* and don't afford further identification, and defendant Brinker's interrogatory responses indicate familiarity with the policies. We presume that it would be unlikely that "investigations" would have been conducted into the plaintiff's complaints about policies. There was no excuse for the Department's refusal to respond to the plaintiff's subpoena for investigatory records relating to these incidents, even if the response was simply that no records existed.

■ The only colorable basis for confusion on the part of the Department is in regard to the plaintiff's one claim that the defendants retaliated against him and his

family for filing this suit. Because the plaintiff failed to identify any of the alleged retaliatory acts, it would be unreasonable to expect the Department to search for investigatory records.

■ The Department should have complied with the plaintiff's subpoena to the great extent that it could have. A deficiency of identification as to one discrete, separate group of documents does not excuse compliance with the rest of a subpoena. The Department's motion to quash or modify the plaintiff's subpoena is granted with respect to any investigatory reports relating to the plaintiff's claim of retaliation by the defendants and is otherwise denied. The plaintiff is directed to modify his subpoena request by identifying any specific factual incidents which support his claim of retaliation by the defendants.

### D. *Cost.*

The Department requested that the Court require the plaintiff to pay the standard photocopying cost of fifteen cents per page. Inasmuch as the plaintiff in his response agreed to that request, such will be the order of the Court. The Department's motion is granted and the plaintiff is directed to pay fifteen cents ($.15) per page for photocopies of documents.

### E. *Nursing summary reports.*

■ The plaintiff subpoenaed Wishard Hospital "nursing summary reports." In addition to their assertion, rejected above, that Indiana law prohibits release of medical records absent a court order, the Department claims that it does not have any records labelled "nursing summary reports." In his response, the plaintiff further identified these records as the " 'nursing discharge summary' (Rev 11/89) form # 7876500" which is given

---

"INTERROGATORY NO. 2: State the name of the Correctional Officer you stated the Plaintiff had taken a swing at?

ANSWER: Officer J. Prestel.

INTERROGATORY NO. 3: State if a conduct report was written on the above incident(,) and if so, what was the date of that report? And if not why not?

ANSWER: My records do not reflect that a conduct report was written. An incident report was written.

INTERROGATORY NO. 4: State if the above action was recorded in your Log book? And, if so, give date and time of that Entry?

ANSWER: No entry on log book. An incident report was written.

INTERROGATORY NO. 5: State the date and time the plaintiff('s) door was locked for security reason? While in the Detention Ward?

ANSWER: The incident occurred at 2:40 a.m., and the doors were locked at 10:00 p.m. per the Post Orders."

 

to all Wishard patients on release but, in the plaintiff's case, was given to the Department as his custodian. The Department did not reply or supplement its motion.

During the Court's review of the confidential portion of the plaintiff's institutional packet, a nursing discharge summary as identified by the plaintiff was discovered. The document appears to be a standard record produced by medical personnel at Wishard at the time of discharge which summarizes the plaintiff's condition, treatment, and medications. Such records are clearly relevant to the issues of the plaintiff's condition at the times of the alleged incidents, the defendants' knowledge of his condition at those times, and any effect on the plaintiff's condition caused by the alleged incidents. The Court perceives no institutional security concerns which would be affected by release of these records to the plaintiff and the Department has presented none. All nursing discharge summaries in the possession or control of the Department shall be produced for the plaintiff's inspection.

*Conclusion.*

The Department's motions to quash or modify the plaintiff's subpoenae are denied with respect to the following documents: (1) the plaintiff's medical records; (2) records of any investigations into the occurrences or incidents which are the subjects of the plaintiff's claims in this Cause; and (3) all Wishard Hospital nursing discharge summaries. Production of these records shall be made by the Department no later than April 9, 1993. The Department's motions are granted in the following respects: (1) the Department is relieved of any obligation to comply with the request for records of investigations into the plaintiff's claim of retaliation by the defendants until he sufficiently identifies specific incidents of retaliation, and (2) the plaintiff must pay the cost of fifteen cents ($.15) per page for copying of documents.

The Department's motion to quash the plaintiff's subpoena requesting production of the confidential portion of his institutional packet is taken under advisement at this time. The Department is allowed until 4:30 p.m. on April 2, 1993 to supplement its privi-

lege arguments with respect to the specific documents questioned by the Court. Counsel should contact the Court regarding identification of those documents.

The Court *sua sponte* modifies the plaintiff's subpoenae to set the date for the Department's compliance therewith, consistent with this Entry and Order, no later than April 2, 1993.

SO ORDERED.