Lloyd E. AVERY, Appellant,

v.

Mrs. Barbara WEBB, et al., Appellees.

No. 3–384 A 59 PS.

Court of Appeals of Indiana,
Third District.

July 18, 1985.

Lloyd E. Avery, pro se.

Linley E. Pearson, Atty. Gen., Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, for appellees.

GARRARD, Judge.

This appeal is taken in order to compel the State Department of Corrections (Department) to allow the petitioner to view letters contained in an inmate packet kept by the Department.

Lloyd Avery (Avery) is presently incarcerated at Westville Correctional Center. The genesis of his suit occurred in 1979 when Avery applied for admission into the state's Work-Release Program.[1] Barbara Webb (Webb) was the state official responsible for the initial review of Avery's application. On the recommendation form that she submitted, she made a handwritten notation which read: "There is a long list of protest letters in the packet."

When Avery learned of Webb's notation, he requested to see the letters which were written in opposition to his application. Initially, he was concerned that the letters would have a deleterious impact on the outcome of his upcoming parole hearing and wanted an opportunity to rebut the letters' contents. Now his stated purpose

for viewing the letters is to gain information necessary to launching a libel suit against the letter writers. Avery does not know, nor does this court know, the contents of the letters or the identity of the letter writers.

We note at the outset that although Avery argues that his state and federal constitutional guarantees are infringed by the nondisclosure of the letters, that is not the case. It is well recognized that a governmental body may shield information or materials from public disclosure. *See Tarlton v. United States* (5th Cir. 1970), 430 F.2d 1351–52; *Stewart v. McCain* (Tex.1978), 575 S.W.2d 509. *See also* Note, *Discovery of Government Documents and the Official Information Privilege*, 76 Col.L.Rev. 142. Avery's general right to sue libelers does not encompass the unfettered right to discover any information that he desires. *See* Indiana Rules of Procedure, Trial Rule 26(B).

However, state statutes control what information the government may deem privileged. Indiana Code 11–8–5–2, which is cast as an enabling act, governs the classification of Department of Corrections documents.

According to it:

"Sec. 2. (a) The department *may*, under IC 4–22–2, classify as confidential the following personal information maintained on a person who has been committed to the department or who has received correctional services from the department:

(1) Medical, psychiatric, or psychological data or opinion which might adversely affect that person's emotional well-being.

(2) Information relating to a pending investigation of alleged criminal activity or other misconduct.

"(3) Information which, if disclosed, might result in physical harm to that person or other persons.

---

1. The Work-Release Program grants eligible adult inmates the privilege of leaving their institutions "to work in gainful occupations during stipulated hours while serving sentences in penal institutions." 210 I.A.C. 1–2–1. Admission

to the program is lodged in the discretion of the Commissioner of the Department of Corrections. 210 I.A.C. 1–2–2(6). It is not a program wherein inmates have a justifiable expectation rooted in state law.

(4) Sources of information obtained only upon a promise of confidentiality.

(5) Information required by law or promulgated rule to be maintained as confidential.

(b) The department may deny the person about whom the information pertains and other persons access to information classified as confidential under subsection (a)." (emphasis added)

Three points about IC 11–8–5–2 are noteworthy. First, the Department is given the permissive authority to promulgate rules that determine which documents are confidential and not subject to disclosure. Second, the Department *must* proceed under the mandatory rulemaking procedures of IC 4–22–2–1 *et seq.*[2] Finally, the Department's scope of authority under subsections (3) and (4) includes the designation of protest letters as confidential.

It appears facially that the Department has either neglected to exercise or elected not to exercise the full extent of its authority to declare information confidential. Its rules promulgated pursuant to IC 4–22–2–1 *et seq.* omit any express reference to information obtained upon a promise of confidentiality; information which, if disclosed, might result in physical harm to the informant or some other person; or "protest letters." Instead, 210 I.A.C. 1–6–2(B) simply provides:

"(B) Confidential information shall include personal or private information concerning the offender including, but not limited to his education, medical history, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, educational, vocational and diagnostic reports.

Confidential information shall, also, include medical, psychiatric and psychological reports, criminal intelligence information and information of clinical reports emanating from an approved drug or substance abuse program consistent with

prevailing law or promulgated regulations."

In addition, this rule must be read in context with 210 I.A.C. 1–6–4, which states:

"Sec. 4. Right of Inspection by an Offender.

(A) An offender or a person designated by an offender as his agent may inspect those portions of the official record classified as confidential with the following exceptions:

(1) Medical, psychological, psychiatric data, or clinical data produced as a consequence of the offender's involvement in a substance abuse program, may not be released to the offender or his agent. These records may be released to a physician, psychologist or psychiatrist designated in writing by the offender.

(2) Criminal intelligence information including reports or statements of witnesses concerning institutional conduct or conduct while on parole wherein appear names of or identifying information concerning witnesses may be withheld consistent with provisions in law. Information so classified shall be subject to periodic review by the official responsible for the maintenance of these records to determine if grounds still exist for their retention."

■ There is a suggestion in the Department's argument that there has been a long-standing administrative interpretation holding confidential from inspection by an offender information where disclosure might result in physical harm to someone. *See State v. Gettinger* (1952), 230 Ind. 588, 105 N.E.2d 161, 168; *City of Evansville v. Southern Ind. Gas & Elec. Co.* (1975), 167 Ind.App. 472, 339 N.E.2d 562, 578. This finds support in the Department's policy No. 17–2, VI, (A)(2)(f) and (g) which refers to such information as "Confidential—Authorized Access Only." However, the materials before the court on the motion for summary judgment are inadequate to determine as a matter of law either the exist-

---

**2.** IC 4–22–2–1 *et seq.* contain rulemaking requirements which administrative agencies must

follow.

ence of such an interpretation and its validity or that the requested inspection would fall within its ban.

Because the protest letters in question are not part of the record and their contents are not otherwise identified, neither this court nor the trial court are in a position to say that they fall within the definition of criminal intelligence information referred to in the rules, or contain data stemming from a substance abuse program enrollment.

It follows that summary judgment was improperly granted based upon the information before the court. Trial Rule 56(C).

We, therefore, reverse the grant of summary judgment and remand to the trial court for further proceedings consistent herewith. If necessary, the court should inspect the materials *in camera* before making any determination on the merits.

Reversed and remanded.

STATON, P.J., and HOFFMAN, J., concur.