FOR PUBLICATION

ATTORNEYS FOR APPELLANTS
: 
ATTORNEYS FOR APPELLEE
:

RICHARD J. DARKO
 
MICHAEL R. MAINE

MARY JANE LAPOINTE DAVID K. HERZOG
 

Lowe, Gray, Steele & Hoffman Baker & Daniels

Indianapolis, Indiana Indianapolis, Indiana

IN THE

COURT OF APPEALS OF INDIANA

INDIANA STATE TEACHERS ASSOCIATION, )

INDIANAPOLIS EDUCATION ASSOCIATION, )

and JOYCE MACKE, )

)

Appellants-Plaintiffs, )

)

vs. ) No.  49A05-9705-CV-194

)

BOARD OF SCHOOL COMMISSIONERS )

OF THE CITY OF INDIANAPOLIS, )

)

Appellee-Defendant. )

APPEAL FROM THE MARION SUPERIOR COURT

The Honorable Thomas J. Carroll, Judge

Cause No.  49D12-9604-CP-521

April 21, 1998

OPINION - FOR PUBLICATION

RUCKER, Judge

This case involves the authority of the Board of School Commissioners of the City of Indianapolis
(footnote: 1) (“IPS”) to adopt a plan designed to raise the academic achievement level of Indianapolis Public School students.  The Indiana State Teachers Association (“ISTA”) and the Indianapolis Education Association (“IEA”)
(footnote: 2) filed suit contending IPS exceeded its authority in enacting a plan.  IPS filed a motion for summary judgment which the trial court granted.  ISTA and IEA now appeal contending the trial court erred in so doing.  We disagree and therefore affirm. 

The relevant and undisputed facts are as follows.  In 1995 the General Assembly enacted Ind. Code § 20-3.1-2-1 
et seq.
 entitled “Improvement in Student Achievement in School Cities.”  The statute was designed specifically to remedy some of the problems plaguing the Indianapolis Public Schools.
(footnote: 3)  Under terms of the statute IPS was required to develop and publish by December 31, 1995 and to implement by July 1, 1996 a plan (“Board Plan”) to improve student achievement.  In addition to specific guidelines required by statute,  the Board Plan was also required to include general guidelines to be followed by teachers and administrators.
(footnote: 4)  Among other things the Board Plan was required to “establish a written performance awards program applicable to each school” which sets out “objective criteria for evaluating outstanding and extraordinary performance.”
(footnote: 5)  In order to implement the statutory mandate, IPS was empowered to change policies currently in place and to develop new ones.  Lastly, the statute imposed obligations upon the educators themselves.  The educators were required to develop a plan for their respective schools (“School Plan”) which conformed to the Board Plan and whose cost did not surpass the amount designated to the school.
(footnote: 6)          

In response to the newly enacted legislation IPS approved an initial draft of the Board Plan on December 27, 1995.  The title page of the draft explained that the Board Plan would undergo changes once IPS received input from parents, educators, etc. and that the draft was not final.  The IEA sent IPS a letter on February 9, 1996 with a proposed revised draft.  The letter stated that in order to comply with relevant statutory authority, IPS was required to make the proffered revisions no later than February 27, 1996.  The following day ISTA and IEA filed a complaint for declaratory judgment as well as injunctive relief attempting to prevent implementation of the Board Plan on grounds that the then current version did not comply with Ind. Code § 20-3.1-2-1 
et seq.
  Ultimately the trial court entered judgment denying injunctive relief and that decision is not a subject of this appeal.  In the interim, IPS  twice amended the Board Plan, and in response ISTA and IEA twice amended their complaint contending the Board Plan still did not comply with the statute.  IPS filed a motion for summary judgment which the trial court granted after a hearing.  This appeal followed.

When reviewing a ruling on a summary judgment motion, our court applies the same standard applied by the trial court.  
State Bd. of Accounts v. Ind. University Found.
, 647 N.E.2d 342, 346 (Ind. Ct. App. 1995), 
trans. denied
.  We do not reweigh the evidence but will consider facts most favorable to the nonmoving party.  
Sullivan v. Evergreen Healthcare Ltd.
, 678 N.E.2d 129, 130 (Ind. Ct. App. 1997), 
trans. denied
.  Summary judgment is appropriate only “if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”  Ind.Trial Rule 56(C).  All facts and inferences from the designated materials must be liberally construed in favor of the non-moving party.  
State Bd. of Accounts
, 647 N.E.2d at 346-47.  Because the construction of a statute is at issue and the relevant facts are not in dispute, the interpretation of the statute presents a pure question of law for which disposition by summary judgment is particularly appropriate.  
Id.
 at 347.

Within the framework of legislative construction, an appellate court attempts to determine and give effect to the legislative intent phrased in the statute.  
Worldcom Network Services, Inc. v. Thompson
, 684 N.E.2d 211, 217 (Ind. Ct. App. 1997).  Where a statute has not previously been construed, the express language of the statute and the rules of statutory construction apply.  
In re E.I.
, 653 N.E.2d 503, 507 (Ind. Ct. App. 1995).  This court is compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and difficulty and prefer public convenience.  
Id.
  In so doing, we are required to keep in mind the objects and purposes of the law as well as the effect and repercussions of such a construction.  
Worldcom Network Services
, 684 N.E.2d at 218.    ISTA and IEA first argue that the educators’ authority to control school policy has been improperly diluted by IPS.  Specifically, they assert that the creation of School Committees by IPS in order to facilitate the development of School Plans takes away the authority given to educators by Ind. Code § 20-3.1.  We disagree.

The statute requires IPS to develop and implement “guidelines for decisions by the educators in each school to improve student achievement in the school.”  Ind. Code § 20-3.1-9-1.  In addition, the Board Plan must “[p]rovide for efforts to increase support of the schools by the parents of students and the neighborhood communities surrounding the schools.”  Ind. Code § 20-3.1-7-2(1).  Noting this mandate the Board Plan provides for the creation of School Committees which bring together a variety of individuals from the community for information gathering purposes at each school
(footnote: 7) and assisting educators in developing School Plans.  The "Purposes and Principles" set forth in the Board Plan make clear that IPS established School Committees, to insure that educators, in making any decisions on how to improve student achievement at their respective schools, obtained input from groups whose participation the General Assembly wanted to encourage.

Although Ind. Code § 20-3.1 allows for participation by various outside individuals in the policy formulation process, sole responsibility for improving student performance  remains with the educators within each school who “may develop [their] own school plan to achieve improvement.”  Ind. Code § 20-3.1-9-3.  The Board Plan does provide that “educators serving on the School Committee shall have responsibility for establishing and shall adopt a recommended School Plan for submission to the educators in the school building.”  R. at 113.  After a recommended School Plan has been formulated, then “[t]he School Plan must be ratified by a majority of the educators in the school building prior to the submission to the Superintendent for review.”  
Id.

 Under the Board Plan, only educators control how their School Plan is written and adopted, not the School Committees.  ISTA and IEA apparently contend that the Board Plan is contrary to statute because certain schools have not followed the procedures laid out in the Board Plan.  Some teachers did not have time to review a School Plan before adoption.  In another school, there was not a formal vote on the School Plan, only an informal solicitation of views.  School Plans were also changed without approval, and teachers were not given a copy of the School Plan before they voted.  These facts, accepted as true, do not reflect illegality in the Board Plan but rather that the educators have not properly followed its mandate.  It is incumbent upon each individual school, not IPS, to ensure compliance with the Board’s Plan.  By creating School Committees, the Board Plan simply permits increased support to educators.  
See
 Ind. Code § 20-3.1-7-2(1).  It is then up to the educators in the individual schools to develop their own School Plan to achieve improvement.  Thus, the Board Plan does not illegally seize authority given to educators by Ind. Code § 20-3.1, and we find no error. 

ISTA and IEA next contend that the Board Plan impermissibly adds criteria to the statutory criteria under which the teachers must be evaluated.  Specifically, they assert that Board Plan violates the statute because it requires that teachers be evaluated based on (i) student remediation rates and (ii) student attendance rates in addition to other criteria.  Again we disagree.

As a condition for accreditation, each school must develop and implement a staff performance evaluation plan under guidelines established by IPS.  Ind. Code §§ 20-3.1-11-2 and -5.  The staff performance evaluation plan must provide for the evaluation of teachers based upon “(i) [t]he development and maintenance of parental involvement in classroom and extracurricular activities; (ii) [s]tudent achievement on assessment tests and assessment programs; and (iii) [t]he teacher’s attendance rates.”  Ind. Code § 20-3.1-11-3(1)(A).  In addition to the enumerated criteria in subsection A, the teachers’ effectiveness may also be evaluated upon “[o]ther objective standards developed by the board for measuring student, teacher, and administrator performance.”  Ind. Code § 20-3.1-11-3(1)(C).

IPS elected to develop “other objective standards” for employee evaluations  in response to some of the legislative findings concerning IPS schools’ inferior performance.  “Remediation rates” and “[s]tudent attendance rates” are considered among the “general types of objective criteria for evaluating outstanding and extraordinary performance.”  Ind. Code § 20-3.1-12-3.  The legislature found that IPS’ student attendance rates have been consistently below the state average and those of adjacent school corporations.  Ind. Code § 20-3.3-3-1(5).  The statute obliges IPS to set out annual performance standards for every school, including improvement in student attendance rates.  Ind. Code § 20-3.1-12-3(3).  Student attendance rates are one of the statutory criteria for evaluating whether a teacher may receive a performance award.  Ind. Code § 20-3.1-12-3(3).  Hence, student attendance rates are both objective and directly related to the statute’s objectives.

The legislature also found that the need for remediation of IPS students has been consistently, significantly higher than the state average and the rate in adjacent school corporations.  Ind. Code § 20-3.1-12-3(2).  Remediation rates are also a criterion for determining performance awards.  Ind. Code § 20-3.1-3-1(3).  Lastly, improving remediation rates is one of the mandatory performance objectives for each school.  Ind. Code § 20-3.1-8-1(2)(B).  ISTA and IEA contend that teachers are required to be evaluated solely on student achievement on the Indiana Statewide Testing for Educational Progress (“ISTEP”) assessment tests, not student remediation rates.  This is not the case.  The legislation gave IPS the power to create “other objective standards,” and it used this authority to ensure that schools recognize the number of students who receive “D” grades or fail.  Ind. Code § 20-3.1-11-3(1)(C).  Hence, remediation rates are another direct and objective manner in which a teacher’s performance can be evaluated.  Thus, we find no error.

Judgment affirmed. 

STATON, J., and NAJAM, J., concur.

FOOTNOTES
1:  Board of School Commissioners of the City of Indianapolis is the corporate name of the School City of Indianapolis popularly referred to as Indianapolis Public Schools. 

2:  The IEA is a school-employee organization affiliated with ISTA and is the exclusive representative of certain certified employees of IPS.

3:  The areas targeted by the legislation include student achievement on statewide tests, remediation rates, graduation rates, and student attendance.  
See
 I.C. § 20-3.1-3-1.

4:  Ind. Code § 20-3.1-9-1(a).

5:  Ind. Code §§ 20-3.1-12-1 and 20-3.1-12-3.

6:  Ind. Code § 20-3.1-9-2.

7:  The composition of individuals serving on School Committees varies at different educational levels.  For elementary schools they are composed of one principal, three certified staff, i.e. teachers, two support staff, and two parents from the parent group, one of whom is the presiding officer of the parent group.  With the exception of the principal, the other representatives are elected by the individuals they represent.  The same composition of individuals is also applicable to middle schools and high schools except two students and one administrator are also selected.  At all schools, a School Committee has the option of adding one community representative.