John GOLITKO, et al., Appellants–Plaintiffs,

v.

**INDIANA DEPARTMENT OF CORREC-TION, et al., Appellees–Defendants.**

No. 49A04–9808–CV–392.

Court of Appeals of Indiana.

May 21, 1999.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, Indiana, Attorney for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Plaintiff John Golitko, on his own behalf and on behalf of a class certified under Ind. Trial Rule 23 (collectively, "Golitko"), appeals the trial court's order denying his motion for summary judgment and granting summary judgment in favor of Appellees–Defendants Indiana Department of Correction and Ed Cohn, in his official capacity as commissioner of the Indiana Department of Correction (collectively, "the DOC"). We affirm.

### Issue

Golitko raises two issues on appeal which we consolidate and restate as whether the DOC's refusal to grant inmates direct, personal access to their medical records violates state statutory and federal constitutional provisions.

### Facts

The largely undisputed facts reveal that DOC employees generate and maintain health care service records reflecting the medical care provided to inmates. (R. 35). Those medical records are kept in individual files at various institutions operated by the DOC. (R. 35). Golitko, an inmate confined in a DOC institution, attempted to review his

medical records due to concerns about the diagnosis and treatment of a medical condition, and for purposes of filing a tort claim alleging improper treatment. (R. 7, 97–98). His repeated requests to examine his medical records were denied. (R. 98).

On November 20, 1997, Golitko filed a Complaint for Declaratory and Injunctive Relief claiming that DOC regulations restricting inmates' personal access to their medical records violated both Indiana law and the Due Process Clause of the Fourteenth Amendment. (R. 5, 7–10). The complaint was later amended to include a claim under 42 U.S.C. § 1983. (R. 12). Golitko additionally sought certification of the action on behalf of a class of similarly situated persons incarcerated in DOC facilities. (R. 5, 18–23). On February 2, 1998, the trial court certified the matter as a class action pursuant to T.R. 23(A) and T.R. 23(B)(2), and appointed Golitko as class representative. (R. 5, 33).[1]

On March 20, 1998, Golitko filed a Motion for Summary Judgment alleging that the DOC's violations of state statutory and federal constitutional provisions entitled him to judgment as a matter of law. (R. 5, 95–96). The DOC thereafter filed a Cross–Motion for Summary Judgment claiming that various statutes and administrative regulations granted the DOC broad discretion to withhold from inmates direct access to their medical records. (R. 6, 100–01, 107). After a hearing, the trial court entered findings and conclusions denying Golitko's Motion for Summary Judgment and granting the DOC's motion. (R. 6, 113–20). This appeal ensued.[2]

**Discussion and Decision**

*Standard of Review*

■ When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue

of material fact and whether the moving party is entitled to judgment as a matter of law. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Hanson v. St. Luke's United Methodist Church*, 704 N.E.2d 1020, 1022 (Ind.1998). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Foster v. Auto–Owners Ins. Co.*, 703 N.E.2d 657, 659 (Ind.1998). Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on this court. *Jones v. Western Reserve Group*, 699 N.E.2d 711, 714 (Ind.Ct.App.1998), *trans. denied.* Further, the fact that both parties requested summary judgment does not alter our standard of review. *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 303 (Ind.Ct.App.1998). We must separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*

*Statutory Construction*

■ Our foremost objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Melrose v. Capitol City Motor Lodge, Inc.*, 705 N.E.2d 985, 989 (Ind.1998). Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and general rules of statutory construction. *Indiana State Teachers Ass'n v. Board of Sch. Comm'rs*, 693 N.E.2d 972, 974

---

1. The class was defined as "all present and future inmates of the [DOC] confined to a facility operated by the [DOC] or operated by a private or quasi-private entity under contract with the [DOC]." (R. 33).

2. On December 22, 1998, Golitko filed a Motion to Inform Court of Later Factual Development,

asserting that during the pendency of this appeal, the DOC created a new Administrative Procedure modifying its practices with respect to inmate access to medical records. Golitko observes and the State concedes that the Procedure is subject to unilateral alteration by the DOC and thus does not affect the merits of this appeal.

(Ind.Ct.App.1998). We examine the statute as a whole and give common and ordinary meaning to the words employed. *Robinson v. Wroblewski,* 704 N.E.2d 467, 474 (Ind. 1998). The legislative intent as ascertained from the whole prevails over the strict literal meaning of any word or term used in the statute. *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 970 (Ind.1998). We presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals; thus, we construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Citizens Action Coalition of Indiana, Inc. v. Indiana Statewide Ass'n of Rural Elec. Coops., Inc.,* 693 N.E.2d 1324, 1327 (Ind.Ct.App.1998); *Indiana State Teachers Ass'n,* 693 N.E.2d at 974.

### Access to Medical Records

Golitko claims that the trial court erred in granting the DOC's Motion for Summary Judgment and in denying his motion. According to Golitko, the legislature has afforded inmates a statutory entitlement to directly review their own medical records, absent particularized determinations that to do so would be injurious. Thus, the argument continues, the DOC's regulations and policies which operate to deny such personal access amount to a violation of both Indiana law and Golitko's due process rights.

Indiana Code section 11–8–5–2 governs the classification and disclosure of inmate personal information.[3] The statute provides in relevant part as follows:

(a) The department may, under IC 4–22–2, classify as confidential the following personal information maintained on a person who has been committed to the department or who has received correctional services from the department:

(1) Medical, psychiatric, or psychological data or opinion which might adversely affect that person's emotional well-being.

. . . .

(3) Information which, if disclosed, might result in physical harm to that person or other persons.

. . . .

(5) Information required by law or promulgated rule to be maintained as confidential.

(b) The department may deny the person about whom the information pertains and other persons access to information classified as confidential under subsection (a). However, confidential information shall be disclosed:

(1) Upon the order of a court;

(2) To employees of the department who need the information in the performance of their lawful duties;

(3) To other agencies in accord with IC 4–1–6–2(m) and IC 4–1–6–8.5;

(4) To the governor or his designee;

(5) For research purposes in accord with IC 4–1–6–8.6(b); or

(6) If the commissioner determines there exists a compelling public interest as defined in IC 4–1–6–1, for disclosure which overrides the interest to be served by nondisclosure.

(c) The department shall disclose information classified as confidential under subsection (a)(1) to a physician, psychiatrist, or psychologist designated in writing by the person about whom the information pertains.

■ Golitko contends that the legislative intent underlying IND.CODE § 11–8–5–2(a)(1) is to grant inmates an unequivocal right of access to their medical records, unless individualized determinations are made that such access would harm inmates' emotional well-being. Accordingly, Golitko argues, the DOC's refusal to disclose his medical records absent a corresponding determination that his well-being would be harmed thereby violates the express purposes of subsection (a)(1).

---

**3.** Personal information is defined as "any information that describes, locates, or indexes anything about an individual or that affords a basis for inferring personal characteristics about an individual." IND.CODE § 4–1–6–1(b). An individual's medical history, among other things, qualifies as personal information. *Id.*

At the outset, we note the well recognized rule that a governmental body may shield information or materials from public disclosure. *Avery v. Webb*, 480 N.E.2d 281, 282 (Ind.Ct.App.1985) (stating that inmate's general right to sue alleged libelers does not encompass the unfettered right to discover any information he desires), *trans. denied.* Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Faver v. Bayh*, 689 N.E.2d 727, 730 (Ind.Ct. App.1997). Those considerations include deterrence of crime, rehabilitation of prisoners, and institutional security. *Id.* Further, we disagree with Golitko's contention that the legislature created a statutory entitlement in inmates to obtain direct, personal access to their medical records. Indiana Code section 11-8-5-2 has been described as an "enabling act" which permits the DOC to classify certain types of information in offenders' files as confidential. *See Duckworth v. Williams*, 494 N.E.2d 368, 369 (Ind.Ct.App.1986); *Avery*, 480 N.E.2d at 282. Subsection (b) of the statute provides that the DOC may deny offenders and others access to any information classified as confidential under subsection (a). Subsection (a)(5), in turn, grants the DOC permissive authority to promulgate rules setting forth which documents are confidential and thus are not subject to disclosure. *See Avery*, 480 N.E.2d at 283.

The DOC has promulgated IND. ADMIN. CODE tit. 210, r. 1-6-2, which defines confidential information as follows:

Confidential information shall include personal or private information concerning the offender including, but not limited to his education, *medical history*, criminal or employment records, finger and voice prints, photographs of his presence, institutional summaries, social history reports, progress reports, education, vocational and diagnostic reports.

Confidential information shall, also, include *medical, psychiatric and psychological reports*, criminal intelligence information and information of clinical reports emanating from an approved drug or substance abuse program consistent with prevailing law or promulgated regulations.

IND. ADMIN. CODE tit. 210, r. 1-6-2(B) (emphases added). Additionally, the administrative code section regulating the inspection rights of offenders provides in relevant part as follows:

(A) An offender or a person designated by an offender as his agent may inspect those portions of the official record classified as confidential with the following exceptions:

(1) Medical, psychological, psychiatric data, or clinical data produced as a consequence of the offender's involvement in a substance abuse program, may not be released to the offender or his agent. These records may be released to a physician, psychologist or psychiatrist designated in writing by the offender.

IND. ADMIN. CODE tit. 210, r. 1-6-4. Finally, DOC Administrative Procedure No. 01-04-104 provides, among other things, that confidential information may not be released to offenders or their agents, except by court order. (R. 57). The Procedure classifies all health care service records as confidential,[4] and grants access to the records as follows:

Health Care Service Records may be released to a physician, psychologist, or psychiatrist designated in writing by the offender. Additionally, Health Care Service Records [may be] released to an attorney representing an offender upon submission of a letter of representation containing the notarized signature of the offender.

(R. 58).

It is clear from the language of IND.CODE § 11-8-5-2 that rather than granting inmates unequivocal access to their medical records, the legislature has given the DOC discretion to deny inmates access to confidential information. It is equally clear that the DOC possesses the discretion to determine which items to classify as confidential. The DOC properly exercised that discretion by classifying inmate medical records as con-

---

4. Health care service records encompass the following treatments: dental, medical, psychiatric, psychological, and substance abuse. (R. 58).

fidential and thus restricting direct accessibility to the materials. Accordingly, neither the administrative regulations promulgated by the DOC nor the DOC's unpromulgated procedure governing access to inmates' medical records violates the terms of IND.CODE § 11–8–5–2.[5]

Golitko counters that interpreting IND. CODE § 11–8–5–2(a)(5) as permitting the DOC to promulgate regulations which deny inmates direct, personal access to their medical records thwarts the explicit legislative purpose of open access expressed in subsection (a)(1). He further claims that the result of such a reading is inconsistency between subsections (a)(1) and (a)(5), in that the former subsection creates a right which the latter effectively extinguishes. Thus, Golitko asserts, in light of the conflict between the two provisions, the more specific subsection (a)(1) should prevail over the more general subsection (a)(5).

It is true that the legislature has granted the DOC specific authority to classify as confidential any medical information which, in its discretion, "might adversely affect [inmates'] emotional well-being." IND.CODE § 11–8–5–2(a)(1). The legislature has likewise granted the DOC specific authority to classify as confidential any information "required by law or promulgated rule to be maintained as confidential." IND.CODE § 11–8–5–2(a)(5). However, we disagree with Golitko that the two provisions are conflicting. Although each subsection allows for confidential classification of inmate medical records, in the case of subsection (a)(1), the legislature granted the DOC clear discretion to deem medical records confidential where inmates' emotional well-being would be adversely affected by disclosure. *See Williams,* 494 N.E.2d at 370 ("The [DOC's]

interest in confidentiality is especially great when disclosure of a document could threaten an individual's safety"). In the case of subsection (a)(5), the legislature delegated to the DOC authority to promulgate rules· classifying as confidential all medical records, regardless of how those records might affect inmates. Although the information covered by the two subsections overlaps somewhat, the provisions are far from conflicting,[6] and we decline to second-guess our legislature's exercise of sound policy.

■ Golitko last contends that the DOC's refusal to grant him direct access to his medical records deprives him of a property interest without due process of law. Golitko is correct that property interests may be created and their dimensions defined by existing rules or understandings that stem from a source independent of the Constitution, such as state law. *See Howard v. Incorporated Town of North Judson,* 661 N.E.2d 549, 553 (Ind.1996) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). However, assuming, without deciding, that Golitko has a legitimate claim of entitlement to his medical records, the relevant statutes and administrative regulations provide for adequate due process. Specifically, IND.CODE § 11–8–5–2(c) provides that medical information which might adversely affect an inmate's emotional well-being must be disclosed to a physician, psychiatrist or psychologist designated in writing by the inmate. The DOC must likewise disclose confidential information upon the order of a court, and where the commissioner determines that a compelling public interest overrides the interest to be served by nondisclosure. IND.CODE § 11–8–5–2(b)(1); (b)(6). Additionally, IND. ADMIN.

---

**5.** We acknowledge that in *Jackson v. Brinker,* 147 F.R.D. 189 (S.D.Ind.1993), the trial court stated in passing that "[i]t would appear that [DOC] rules 1–6–6(B)(2) and 1–6–4 exceed the authority of § 11–8–5–2 and rule 1–6–2(B) ... in that they impose a blanket confidentiality protection on all of an offender's medical records regardless of whether release of the records might adversely affect that person's emotional well-being." *Id.* at 199. However, we observe that in so stating, the court did not consider the effect of IND.CODE § 11–8–5–2(a)(5), the subsection which we find dispositive of the present dispute.

**6.** We note, for example, that medical data which might adversely affect an inmate's emotional well-being must be disclosed to a physician, psychiatrist, or psychologist designated in writing by the offender. IND.CODE § 11–8–5–2(c). In like fashion, IND. ADMIN CODE tit. 210, r. 1–6–4 provides for access to any medical records by a physician, psychologist, or psychiatrist designated in writing by the offender.

CODE tit. 210, r. 1–6–4 provides that medical, psychological, and psychiatric data, among other things, may be released to a physician, psychiatrist or psychologist designated in writing by the inmate.

Finally, Administrative Procedure 01–04–104 provides for access to health care service records by attorneys, physicians, psychiatrists, and psychologists properly designated in writing by the inmate.

None of the foregoing provisions prevent designated medical professionals from sharing medical data contained in inmates' files with those inmates. Accordingly, although the legislature has granted the DOC authority to deny inmates direct access to their medical records, inmates who wish to view their records are not precluded from doing so indirectly. Stated differently, the relevant statutory and administrative rules provide sufficient due process to inmates, while ensuring that confidential medical information is shared with inmates only at the discretion of qualified professionals. In sum, we cannot conclude that the DOC's refusal to grant inmates direct, personal access to their medical records violates due process. Thus, the trial court did not err in granting summary judgment in favor of the DOC and in denying Golitko's motion for summary judgment.

Affirmed.

FRIEDLANDER, J., and STATON, J., concur.