Jerry MONTGOMERY, Appellant–Plaintiff,

v.

INDIANA DEPARTMENT OF CORRECTION; Evelyn Ridley–Turner, Commissioner, Indiana Department of Correction; Indiana State Prison; State Personnel Advisory Board; and Indiana Civil Rights Commission, Appellees–Defendants.

No. 49A04–0301–CV–28.

Court of Appeals of Indiana.

Sept. 4, 2003.

Jerry Montgomery, Michigan City, IN, Appellant, Pro Se.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

■ Jerry Montgomery, an inmate within the Indiana Department of Correction (the "DOC"), acting pro se, appeals the trial court's order dismissing his complaint wherein he asserted a right to receive pornographic materials during his incarceration pursuant to Indiana Code § 11–11–3–6, governing printed materials received by incarcerated adults.[1]

We affirm in part, reverse in part, and remand.

### ISSUES

1. Whether the trial court erred by granting the State's motion to dismiss Montgomery's complaint.

2. Whether the trial court erred by denying Montgomery's motion for a default judgment.

### FACTS

Apparently, Montgomery is a prisoner at the Indiana State Prison ("ISP").[2] On July 24, 2002, Montgomery filed a petition

---

1. Montgomery named as defendants: the Indiana Department of Correction; Evelyn Ridley Turner, Commissioner of the Indiana Department of Correction; the Indiana State Prison; the State Personnel Advisory Board; and the Indiana Civil Rights Commission. Montgomery makes no arguments or explanation as to the bases for an action against the State Personnel Advisory Board, or the Indiana Civil Rights Commission. *See* Ind. Trial Rule 8(A)(1) requiring a "short and plain statement of the claim showing that the plead-

er is entitled to relief." Montgomery made no effort to tie the two entities to his cause of action. As such, the dismissal of those two governmental entities is summarily affirmed.

2. Montgomery does not enlighten us as to his status, but alleges that the matters giving rise to his complaint occurred at the Indiana State Prison. Montgomery does not give us details, including dates when the matters occurred.

entitled: "Verified Petition for Judicial Review of Administrative Decision Violative of Indiana Code/Policy and/or a Petition for Writ of Mandate to Either Enjoin Noncompliance with Indiana Code or Order Compliance with Indiana Code." (Montgomery App.,[3] State's App. 1). At its essence, the petition requests judicial review of an ISP policy that prevented Montgomery from ordering or receiving "sexual penetration pornographic matter and themes" in alleged violation of the provisions set out within Indiana Code § 11–11–3–6.[4] (State's App. 2). Montgomery asserts that Indiana Code § 11–11–3–6 creates a right to receive "penetration pornographic material"[5] that does not run afoul of Indiana obscenity laws.

On October 16, 2002, the State, on behalf of all of the named defendants, moved for dismissal. Pursuant to Indiana Trial Rule 12(B)(1), the State asserted that the trial court lacked subject-matter jurisdiction over the matter, and pursuant to Indiana Trial Rule 12(B)(6), the State asserted that Montgomery failed to state a claim upon which relief could be granted.

On November 1, 2002, Montgomery filed a motion for default judgment. He asserted that the State's motion to dismiss did not constitute a responsive pleading; thus, the State had failed to respond to his complaint.

On November 6, 2002, the trial court granted the State's motion to dismiss. In pertinent part, the trial court stated: "The Court lacks jurisdiction to review internal administrative decisions of the Indiana De-

partment of Correction, which are not subject to judicial review under the Indiana Administrative Orders and Procedure Act." (State's App. 25).

## DECISION

### 1. *Dismissal*

 At the outset we note that Montgomery, barely within the bounds of notice pleading, urges violations of the federal constitution, the state constitution, and a statute. *See* Ind. Trial Rule 8(A) (notice pleading requires only a short, plain statement of the claim and that the pleader is entitled to relief). Montgomery specifically states that he is entitled to pornographic material pursuant to Indiana Code § 11–11–3–6, which, as we noted in footnote 4, provides:

> A confined person may acquire and possess printed matter on any subject, from any source . . . . The department may inspect all printed matter and exclude any material that is contraband or prohibited property. However, in the case of a confined adult, the department may not exclude printed matter on the grounds it is obscene or pornographic unless it is obscene under Indiana law.

Courts generally have the power to review actions taken by state agencies pursuant to the Administrative Orders and Procedures Act ("AOPA"); however, Indiana Code § 4–21.5–2–5(6) exempts "[a]n agency action related to an offender within the jurisdiction of the department of

---

3. Montgomery's Appendix does not contain sequential page numbers.

4. In pertinent part, the statute provides: "A confined person may acquire and possess printed matter on any subject, from any source. . . . The department may inspect all printed matter and exclude any material that is contraband or prohibited property. How-

ever, in the case of a confined adult, the department may not exclude printed matter on the grounds it is obscene or pornographic unless it is obscene under Indiana law." ·

5. The State interprets Montgomery's phrase to mean pornographic material depicting sexual penetration.

correction."[6] The State, and the trial court, equated the inapplicability of the AOPA with an inability for the judiciary to review actions taken by the DOC, including those under Indiana Code § 11–11–3–6. Such is not the case.

In *Ratliff v. Cohn,* 693 N.E.2d 530, 547–48 (Ind.1998), our supreme court addressed the statutory AOPA exemption and specifically determined that the statute does not support a determination that the judiciary lacks subject-matter jurisdiction over constitutional questions raised by a confined person regarding DOC actions. The *Ratliff* court stated:

> There is nothing in this statute [regarding the AOPA exemption] to support the [DOC's] broad statement that courts lack the power of judicial review over alleged violations of an inmate's right to medical treatment under the Eighth Amendment and an inmate's constitutionally protected interests in conditions of reasonable care and safety under the Fourteenth Amendment. The grounds urged by the [DOC] in support of [the] challenge to the trial court's jurisdiction are insufficient to undermine the Marion Superior Court's general subject-matter jurisdiction.
>
> We find no lack of subject-matter jurisdiction. The trial court's dismissal cannot be affirmed upon such a claim.

*Id.* at 548 (citation omitted).

■ We are guided by the principles set out in *Ratliff.* The statute exempting certain DOC actions from the AOPA does not divest the judiciary of subject-matter jurisdiction over alleged violations of constitutional rights, or as in this case, statutory and constitutional rights. The trial court erred by determining that it was without subject-matter jurisdiction in the present matter.

■ Also, we note that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Golitko v. Indiana Dept. of Correction,* 712 N.E.2d 13, 17 (Ind.Ct.App.1999) (determining that the legislature did not create a statutory entitlement for inmates to obtain direct access to their medical records). "Those considerations include deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* The State chose not to argue this matter on the merits. Having no evidence before us, we are constrained to review the narrow issue of whether the trial court lacked subject-matter jurisdiction. Thus, while recognizing that Montgomery's less than artful claims under the statute might evoke a negative visceral response, and given the DOC's ability to restrict privileges and rights, that Montgomery might not be entitled to relief under the statute, we must remand the matter to the trial court for further action inasmuch as the trial court has subject-matter jurisdiction in this case.

## 2. *Default Judgment*

■ Montgomery urges that a default judgment should have been entered against the State due to its failure to file a responsive pleading. We disagree for several reasons.

■ Chief among the reasons that Montgomery is not *entitled* to a default judgment is that the trial court is vested with broad discretion to accept even delinquent pleadings and deny requests for default judgments in order to advance the policy favoring resolution of causes on the

---

6. At one point, Montgomery references the AOPA. Although the AOPA is inapplicable, Montgomery plainly stated that he was asserting constitutional and statutory rights.

merits. *Cf. Dreyer & Reinbold v. AutoXchange.com, Inc.*, 771 N.E.2d 764, 769 (Ind.Ct.App.2002). Here, the State sought and was granted extensions to file an answer in the cause. The trial court did not abuse its discretion by failing to enter a default judgment for Montgomery.

Therefore, the trial court's judgment dismissing the State Personnel Advisory Board and the Indiana Civil Right Commission is summarily affirmed, and the trial court's failure to enter default judgment for Montgomery is affirmed. However, the trial court's determination that it was without jurisdiction is reversed, and the matter is remanded to the trial court for further proceedings consistent with this decision.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.

BAKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I agree that the trial court erroneously concluded that it lacked subject matter jurisdiction over Montgomery's claim.

I further agree that Montgomery was not entitled to a default judgment against the State for failure to file a responsive pleading. I part company, however, from the majority opinion with respect to the rationale stated for the holding. The majority rests its decision upon the proposition that the trial court had "granted extensions to file an answer in the cause." Slip op. at 6. The majority's statement is certainly an accurate statement but it does not, in itself, provide a resolution of the issue.

The extension of time granted *to file an answer* terminated on October 16, 2002.

On that date the State did not file a responsive answer but instead filed its motion to dismiss. This state of affairs, however, does not entitle Montgomery to a reversal of the trial court's implicit denial of a default judgment.

The motion for default judgment was not filed until November 1, 2002. At that time, the State's motion to dismiss had been pending for 15 days and awaited ruling by the trial court. At no time had Montgomery moved to strike the State's motion to dismiss as being not in conformity with the pleading specifically authorized by the extension of time. The trial court was therefore entitled to consider and rule, albeit erroneously, upon the motion to dismiss.

Upon this basis I am able to concur in the decision of the majority and in the remand for further proceedings.