**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 16 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CHOU-IL LEE**
**PETER J. PRETTYMAN**
**MICHELE L. RICHEY**
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**CLAYTON C. MILLER**
Bamberger, Foreman, Oswald & Hahn, LLP
Indianapolis, Indiana

**R. THOMAS BODKIN**
**J. HERBERT DAVIS**
Bamberger, Foreman, Oswald & Hahn, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CONNIE HINSENKAMP, TOWN OF SEELYVILLE CLERK-TREASURER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1309-CC-408 |
| | ) | |
| SEELYVILLE TOWN COUNCIL; JERRY JONES, COUNCIL PRESIDENT; JERRY REYNOLDS, COUNCIL MEMBER; and JOHN WADE, COUNCIL MEMBER, | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT, EN BANC
The Honorable John T. Roach, Judge
The Honorable Phillip I. Adler, Judge
The Honorable David R. Bolk, Judge
The Honorable Chris A. Newton, Judge
The Honorable Michael J. Lewis, Judge
Cause No. 84D03-1203-CC-1455

**July 16, 2014**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Connie Hinsenkamp appeals the trial court's partial denial of her motion for summary judgment.

We affirm.

## ISSUES

Hinsenkamp presents three issues for our review, which we restate as:

I.      Whether the trial court erred by denying summary judgment to Hinsenkamp on the issue of her compensation.

II.     Whether the trial court erred by denying summary judgment to Hinsenkamp on the issue of her authority to discharge a Town employee.

III.    Whether the trial court erred by denying summary judgment to Hinsenkamp on the issue of the forfeiture of Town Council positions.

## FACTS AND PROCEDURAL HISTORY

The Town of Seelyville ("Town") has a town council that is made up of three elected members, one of whom serves as President. At all times relevant to this action, the three members of the Seelyville Town Council ("Town Council") were Jerry Jones, Jerry Reynolds, and John Wade. In addition to an elected town council, the Town has a clerk-treasurer, which is also an elected office, and a town manager, which is not an elected position. From February 1, 2000 through December 31, 2011, Tamara Caton served as the clerk-treasurer of the Town. Commencing January 1, 2004, Caton was hired by the town manager with the approval of the Town Council to serve as the office manager of the water

and sewer utility departments of the Town. The position of office manager is not an elected office and is under the direct supervision of the town manager.

In 2011, Connie Hinsenkamp was elected to the position of clerk-treasurer of the Town, and she took office on January 1, 2012. Although no longer holding the elected position of clerk-treasurer, Caton remained in the position of office manager after January 1, 2012. However, on February 2, 2012, Hinsenkamp attempted to discharge Caton as office manager. The same day Jones, in his capacity as Town Council President, rehired Caton and ordered her to return to work on February 3, 2012. The Town Council then sent a letter to Hinsenkamp explaining that although as clerk-treasurer she needed to work with office manager Caton on Town business, she did not have the authority to terminate Caton.

A few days later, Hinsenkamp, through counsel, put the Town Council on notice not only that she disagreed with their conclusion that she did not have the authority to terminate Caton but also that she was being under-compensated based upon what Caton had been paid when she held the office of clerk-treasurer. The Town Council responded to Hinsenkamp that her salary of $16,636.00 was the correct amount for the office of clerk-treasurer, that it was not increasing her pay, and that it was not authorizing her to make adjustments to her pay. After receiving the Town's response, Hinsenkamp made an inquiry to the State Board of Accounts. The State Board of Accounts issued its opinion to Hinsenkamp, and, based upon that opinion, Hinsenkamp began paying herself an increased salary of $48,195.06.

On March 2, 2012, Hinsenkamp filed a complaint against the Town Council seeking declaratory and injunctive relief, and on May 30, 2012, she amended the complaint to add

3

a fourth count. Both parties filed motions for summary judgment in March 2013, and, following a hearing, the Vigo Superior Court, en banc, granted summary judgment to Hinsenkamp on one issue and denied summary judgment on the remaining three issues. Hinsenkamp now appeals as to the issues upon which the court denied her summary judgment.

## DISCUSSION AND DECISION

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010). On appeal from a grant or denial of summary judgment, our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010); *see also* Ind. Trial Rule 56(C). Appellate review of a summary judgment motion is limited to those materials designated to the trial court. *Sheehan Const. Co., Inc.*, 938 N.E.2d at 688.[1] All facts and reasonable inferences drawn from those facts are construed in favor of the non-movant. *Id*.

## I. COMPENSATION

Hinsenkamp contends that the trial court erred by denying her summary judgment on the issue of her compensation as clerk-treasurer. The gravamen of her claim is that she

---

[1] Counsel is admonished that in summary judgment proceedings, parties are not to designate entire portions of the record, such as depositions. Rather, Trial Rule 56(C) requires each party to designate to the court all *parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies.

is entitled to be compensated in the amount of $48,195.06 rather than the $16,636.00 authorized by the Town Council.

In support of her argument, Hinsenkamp cites Indiana Code section 36-5-3-2 (1993) and Town Ordinance §31.05. Indiana Code section 36-5-3-2 provides for the compensation of town officers and employees and provides: "The compensation of an elected town officer may not be changed in the year for which it is fixed, nor may it be reduced below the amount fixed for the previous year." Ind. Code § 36-5-3-2(c). Subsection (a) of the same statute defines compensation as "the total of all money paid to an elected town officer for performing duties as a town officer, regardless of the source of funds from which the money is paid." Ind. Code §36-5-3-2(a). In addition, the Town adopted Ordinance §31.05, subsection (B) of which provides: "The compensation [for the office of clerk-treasurer] may not be changed in the year for which it is fixed, nor may it be reduced below the amount fixed for the previous year." Appellant's App. p. 717. Hinsenkamp asserts that by paying Caton $48,195.06 in 2011 and paying her $16,636.00 in 2012, the Town Council is violating Indiana Code 36-5-3-2(c) and Ordinance §31.05(B) by reducing the clerk-treasurer's compensation below the amount of the previous year.

A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Perry-Worth Concerned Citizens v. Bd. of Comm'rs of Boone Cnty.*, 723 N.E.2d 457, 459 (Ind. Ct. App. 2000), *trans. denied*. However, we may not interpret a statute that is clear and unambiguous on its face. *Schafer v. Sellersburg Town Council*, 714 N.E.2d 212, 215 (Ind. Ct. App. 1999), *trans. denied*. The words of the statute are to be given their plain, ordinary

5

and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* This court is required to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. *Ind. State Teachers Ass'n v. Bd. of Sch. Comm'rs of City of Indianapolis*, 693 N.E.2d 972, 974 (Ind. Ct. App. 1998). In so doing, we must be mindful of the purpose of the statute, as well as the effect of such an interpretation. *Id.*

The designated evidence shows that Caton took office as clerk-treasurer on February 1, 2000, and served in that position through December 31, 2011. In January 2004, Marilyn Williams, who had held the position of bookkeeper for the utility departments for 44 years, retired. When Williams retired, the Town Council changed the title of the position from bookkeeper to office manager and hired Caton to fill the position commencing January 1, 2004. From January 1, 2004 to December 31, 2011, Caton served in both the elected position of clerk-treasurer and the hired, non-elected position of office manager. In 2011, Caton earned a combined total of $48,195.06 from these two positions.

In his deposition, Town Council member Reynolds testified that the clerk-treasurer and the bookkeeper/office manager positions are and always have been two separate positions. Further, all three council members affirmed in their affidavits that the two positions are distinct and that the clerk-treasurer is an elected office while the office manager is a Town employee hired by the Town Council. Moreover, Hinsenkamp agreed during her deposition that there is a distinction between the position of office manager and the elected position of clerk-treasurer.

6

Further, in her affidavit, Caton affirms that the duties of the position of office manager were distinct from the duties of elected clerk-treasurer. In addition, all three council members affirmed in their affidavits that the duties of the office manager are not the duties performed by the clerk-treasurer. Rather, the duties of the office manager are the same duties previously performed for 44 years by Marilyn Williams, the bookkeeper with a change in title, only, to the position in 2004 when Caton was hired.

The fact that these are two distinct positions is also reflected in the Town's salary ordinance where the salary for the clerk-treasurer is a separate line item from that of the salary for the office manager. Town Ordinance 2010-1214 set the salaries of all elected and appointed officials and employees of the Town for 2011. Ordinance 2010-1214 decreed that in 2011 the clerk-treasurer was to be paid $16,636.00. The ordinance also set forth in a completely separate line item that the office manager would be paid between $30,558.93 and $32,558.93. Caton earned $31,559.06 as office manager in 2011. Therefore, Caton's combined earnings in 2011 when she held both the elected position of clerk-treasurer and the hired position of office manager were $48,195.06. When asked at her deposition what she understood the clerk-treasurer's salary to be, Hinsenkamp responded, "I don't know the odd dollar, 16,000 something." Appellant's App. p. 158.

Hinsenkamp also relies on an opinion she solicited from the State Board of Accounts as to the characterization of Caton's 2011 compensation. The State Board of Accounts indicated that it would consider the total amount paid to Caton, including the amount she was paid as office manager, as the amount which cannot be reduced pursuant to Indiana Code section 36-5-3-2(c). However, as the State Board of Accounts specifically stated,

this is an audit opinion and not a legal opinion. In other words, Hinsenkamp could, and did, begin paying herself the increased salary of $48,195.06 without the State Board of Accounts taking exception to such practice during the audit of Town funds. However, the opinion carries no weight where, as here, the legal validity of her increased salary is at issue.

It is clear from the designated evidence that from 2004 to 2011, Caton held two separate positions having separate duties and paying separate salaries. She served as an elected town officer in the position of clerk-treasurer. The total salary paid to Caton in 2011 as the clerk-treasurer for performing the duties of the clerk-treasurer was $16,636.00. Caton was paid an additional salary of $31,559.06 only because she was also employed by the Town as office manager of the Town's utilities. Accordingly, in 2011 the elected town officer of clerk-treasurer received a salary of $16,636.00, and, pursuant to Indiana Code section 36-5-3-2(c), Hinsenkamp should receive a salary of no less than $16,636.00 for 2012. The trial court did not err by denying summary judgment to Hinsenkamp on the issue of her compensation.

## II. AUTHORITY TO TERMINATE

For her second claim of error, Hinsenkamp alleges that the trial court erred by denying her summary judgment on the issue of her authority to discharge a Town employee. Particularly, she maintains that pursuant to Indiana Code section 36-5-6-7 (1988) and Ordinance § 31.04 she had the authority to discharge Caton as office manager.[2]

---

[2] Hinsenkamp also argues that the Town Council failed to follow the proper procedure to pass Resolution No. 02-14, 2012 A, which clarifies the duties of the office manager and the clerk-treasurer as well as

8

Indiana Code section 36-5-6-7(b) states: "If a town owns a utility and the clerk-treasurer is directly responsible for the billing and collection of that utility's rates and charges, the clerk-treasurer shall appoint those employees who are also responsible for that billing and collection. These employees serve at the clerk-treasurer's pleasure." Town Ordinance § 31.04(B) contains the same provision.

We are again called upon for statutory interpretation. The use of the term "if" at the beginning of Indiana Code section 36-5-6-7(b) indicates that a certain condition or conditions must be met before the remainder of the section is engaged. In this statute there are two conditions. The legislature employed the conjunctive term "and" to connect the two conditions, indicating its intent that not just one or the other but that both conditions must be met before the remainder of the section is applicable to a given situation. Accordingly, in order for a clerk-treasurer to employ staff responsible for billing and collection who serve at her pleasure, two conditions must be met: (1) the town must own a utility and (2) the clerk-treasurer must be directly responsible for the billing and collection of the utility's rates and charges.

The evidence designated by the parties shows that the Town owns two utilities – sewer and water. However, the evidence also shows that the clerk-treasurer is not responsible for the billing and collection for the utilities. A letter from the Town Council to Hinsenkamp states that the Town clerk-treasurer is not directly responsible for the billing

---

indicating to whom the office manager reports. This failure, she claims, results in her having the authority to discharge Caton as office manager. Because this issue is resolved by application of the pertinent statute and ordinance, we need not address whether the Town Council properly passed Resolution No. 02-14, 2012 A.

and collection for the utilities. Further, Reynolds testified in his deposition that the Seelyville clerk-treasurer does not have and has never had any responsibility for the billing and collection for the utilities of the Town. Wade and Jones indicated the same in their depositions.

Moreover, the Town Council members testified that the billing and collection for the Town's utilities has been the duty of the bookkeeper/office manager for over forty years and that the Town Council does the hiring to fill this position. The letter from the Town Council to Hinsenkamp states that the office manager is a Town employee who is hired by the Town Council and who reports to the town manager and the Town Council.

Here, the uncontradicted evidence shows that the Seelyville clerk-treasurer is not directly responsible for the billing and collection of the Town's utilities' rates and charges. Therefore, the second condition of the statute has not been met in order to trigger the clerk-treasurer's authority to appoint the employees who perform the billing and collection and serve at her pleasure. *See Schafer*, 714 N.E.2d at 217 (stating that language of Indiana Code section 36-5-6-7(b) indicates clerk-treasurer is not necessarily directly responsible for billing and collection of utility fees; rather, statute states that *if* town owns utility *and* clerk-treasurer is directly responsible for billing and collection of utility's fees, then clerk-treasurer is authorized to appoint employees to assist her with billing and collection function). Thus, Hinsenkamp had no authority to discharge Caton as office manager under Indiana Code section 36-5-6-7(b) or Ordinance § 31.04.

10

## III. FORFEITURE OF POSITIONS

For her third and final allegation of error, Hinsenkamp asserts that the Town Council members approved claims after council meetings had adjourned, thus forfeiting their town council positions pursuant to Indiana Code sections 36-5-4-3 (1980) and 36-5-4-4 (1992).

Indiana Code section 36-5-4-3 provides:

> (a) The town legislative body or a board of the town may order the issuance of warrants for payment of money by the town only at a meeting of the legislative body or board.

> (b) A town officer who violates this section forfeits his office.

Indiana Code section 36-5-4-4 states:

> (a) Except as provided in section 12 of this chapter [preapproved payments of claims], the town legislative body or a board of the town may allow a claim:
> (1) only at a meeting of the legislative body or board; and
> (2) only if the claim was filed in the manner prescribed by IC 5-11-10-2 at least five (5) days before the meeting.

> (b) A town officer who violates this section forfeits his office.

The designated evidence shows that Jones testified in his deposition that prior to April 2012, the Town Council approved claims after the council meeting had adjourned. He stated that prior to April 2012, he was not aware of a statute stating that claims are to be approved in a council meeting and that he could forfeit his office for a violation. Similarly, Reynolds testified that the Town Council had approved bills after council meetings but that they now approve bills during the meeting.

We first note that a mandatory directive such as "shall" or "must" is absent from the language of these statutes. Further, we are mindful that this Court is to ascertain and

execute legislative intent and to interpret statutes in such a manner as to prevent absurdity and difficulty and to advance public convenience. *Ind. State Teachers Ass'n*, 693 N.E.2d at 974. In so doing, we must be aware of the purpose of the statutes, as well as the effect of such an interpretation. *Id.* The trial court determined that the statutes were not violated "because at least two of the three council persons approved the claims, and that constitutes a quorum of the Seelyville legislative body, and, therefore, a meeting of the legislative body." Appellant's App. pp. 15-16. We agree and further do not believe the legislature intended, in circumstances such as these, for the entire elected slate of the governing body of a town to be wiped out. The evidence does not show, and Hinsenkamp does not allege, any harm to the Town or any malicious intent or improper gain on the part of the Town Council in improperly approving past claims; rather, the evidence demonstrates an innocuous violation of the statute. As their testimony indicates, the Town Council changed the timing of its approval of claims upon learning the terms of the statute. Moreover, the manner in which the Town's claims were approved prior to April 2012 was raised by Hinsenkamp only when her disagreements with the Town Council and Caton were not resolved in her favor.

As we stated, the process by which the Town's past claims were approved was brought up only when Hinsenkamp's disagreement with the Town Council and Caton escalated into a lawsuit. Thus, as Hinsenkamp acknowledged in her deposition, she also paid claims without objection that were approved in this manner. She cannot stand by and fail to object as a violation occurs and then be heard later to complain that due to such procedures the members of the Town Council should forfeit their offices. *See, e.g.*, *Simon*

12

*Prop. Grp., L.P. v. Mich. Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1069 (Ind. Ct. App. 2005) (stating that party who neglects to avail himself of valid objection to proceeding and stands by or participates therein until adverse result is reached must bear the consequences), *trans. denied*; *see also Frye v. Vigo Cnty.*, 769 N.E.2d 188, 197 (Ind. Ct. App. 2002) (Baker, J., concurring) (noting that had party failed to object to violations of Open Door law at meeting in question, then he would not be heard to later complain that such procedures were neglected to detriment of public). The protection of the public in political subdivision decision-making is disserved when a party acquiesces to a violation and then litigates the violation in an act of vindictiveness for wrongs allegedly perpetrated against that party. Based upon these circumstances, we believe it would produce an incongruous result in this situation to require the duly elected Town Council members to forfeit their offices.

## CONCLUSION

For the reasons stated, we conclude that the trial court properly denied summary judgment to Hinsenkamp on the issue of her compensation, on the issue of her authority to discharge a Town employee, and on the issue of the forfeiture of Town Council positions.

Affirmed.

NAJAM, J., and BROWN, J., concur.